# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 16, 2015

Plaintiff-Appellee,

v

No. 319951
Oakland Circuit Court
LC No. 2013-246194-FC

AARON MICHAEL OVERBEEK,

Defendant-Appellant.

Before: FORT HOOD, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a). The trial court sentenced defendant to concurrent prison terms of 25 to 80 years for each conviction. We affirm.

## I. FACTUAL BACKGROUND

When the victim was in the 7th grade, she moved in with her biological mother, Amanda Capps, and her stepfather, defendant. After a couple of months of living there, Capps went to a bachelorette party and left the victim home with her two younger brothers and defendant. The victim testified that she was watching television when defendant called her into his room, closed the door, and locked it. When the victim got onto defendant's bed, he undressed her, touched the outside of her vagina, licked her vagina, then inserted his penis into her vagina. The victim testified that she had never had sex before this incident.

Later that weekend, while Capps was still gone, defendant came into the bathroom while the victim was taking a bath. He inserted his penis into her vagina while she was in the bathtub. When Capps returned, the victim did not tell her what happened because she was afraid Capps would not believe her. The victim also testified that she was afraid defendant would hurt her family.

The sexual abuse continued throughout the course of several months. The victim testified that defendant inserted his penis into her mouth and into her vagina on several occasions. The victim also testified that Capps talked to her about sex and bought her a vibrator. However, the night after the purchase, defendant used the vibrator on the victim's vagina and touched her vagina with his fingers.

-1-

After several months of this sexual abuse, the victim finally disclosed to Capps what had happened. The victim testified that Capps yelled at her and disclaimed the allegations. The victim also testified that Capps would not let her go to school for a period of time because Capps did not want the victim to reveal what had happened.

Capps eventually took the victim to a general practitioner, but warned the victim not to reveal the details of what had occurred. Capps testified that she merely told the doctor that she had reason to believe that the victim was sexually active. At some point, defendant moved to a hotel, and Capps and defendant searched the victim's room and removed several items. During its investigation, the police recovered a Motorola phone, a Nintendo DS, and a Toshiba laptop[1] from a blue backpack the defendant had possessed.

The victim's maternal grandfather, who had never met the victim, eventually contacted the police to report the abuse. Capps testified that she did not call the police because she received advice from counsel that if she did not believe the allegations, she was not required to report them. Defendant was convicted of three counts of first-degree criminal sexual conduct. He now appeals on several grounds.

## II. EVIDENCE FROM VICTIM'S MOTHER

### A. STANDARD OF REVIEW

Defendant first contends that evidence from Capps was not relevant, nor admissible. Because defendant did not object to the evidence below, his claim is unpreserved. We review this unpreserved challenge for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Defendant also claims that his counsel's failure to object to this improper evidence constituted ineffective assistance of counsel. "Absent an evidentiary hearing, this Court's review of counsel's performance is limited to mistakes apparent on the record." *People v Fonville*, 291 Mich App 363, 382-383; 804 NW2d 878 (2011).

### B. ANALYSIS

Pursuant to MRE 401, evidence is relevant when it has a tendency to make a material fact more or less probable. *People v Sabin*, 463 Mich 43, 56-57; 614 NW2d 888 (2000). "Materiality, however, does not mean that the evidence must be directed at an element of a crime or an applicable defense. A material fact is one that is in issue in the sense that it is within the range of litigated matters in controversy." *Id.* (quotation marks and citation omitted).

In this case, part of the defense strategy was to argue that the victim was not abused; otherwise she would have reported the abuse immediately to her mother, Capps. The victim testified that she did not immediately report the abuse because she feared Capps would not

---

[1] The laptop belonged to the victim.

believe her. That Capps, in fact, doubted her daughter's allegations—as evidenced by the fact that she followed an attorney's advice not to call the police if she thought the allegations were untruthful, she took steps to interfere with the investigation and kept the victim out of school, she brought the victim to a general practitioner (as opposed to a specially-trained sexual assault nurse examiner (SANE)), and prohibited the victim from revealing the allegations to the general practitioner—was relevant to the credibility of the victim's story. Also, evidence that Capps bought the victim a vibrator, which defendant then used to abuse the victim, made it less likely that the victim would approach Capps about abuse. Thus, this evidence was relevant and material. MRE 401.

Defendant further challenges evidence that Capps possessed physical evidence and removed the memory cards from electronic devices that the police later recovered. The victim testified that defendant photographed her in a sexually explicit manner. Yet, none of these photographs were on the devices the police recovered. Defendant possessed these items after searching the victim's room, brought them to a hotel, and then gave them to Capps for safekeeping. Thus, the jury could infer that defendant had an opportunity to delete, or had Capps remove, any damaging photographs. This evidence is relevant as it is indicative of consciousness of guilt. *People v Kowalski*, 489 Mich 488, 509 n 37; 803 NW2d 200 (2011) ("[A]ttempts to conceal involvement in a crime are probative of a defendant's consciousness of guilt.") (Quotation marks and citation omitted).

Nevertheless, defendant insists that all of this evidence should have been excluded because it was more prejudicial than probative pursuant to MRE 403. MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This "unfair prejudice" refers to the tendency of evidence to inject considerations extraneous to the merits of the lawsuit, such as the jury's bias, sympathy, anger, or shock. *People v Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011). The admission of evidence is unfairly prejudicial only when danger exists that the jury will give marginally probative evidence undue or preemptive weight. *Id.* However, "the prosecution does not have to use the least prejudicial evidence to make out its case." *Id.*

Defendant asserts that the challenged evidence was not sufficiently connected to him, which caused the jury to be biased. Yet, evidence of Capps's behavior *was* connected to defendant, and relevant to the charged offenses. Defendant warned the victim that he would deny any allegations she offered against him. He then was involved in the search of the victim's room, and the retention of physical evidence that could have incriminated him. He also remained in constant communication with Capps after the allegations, even though he was living separately. Thus, the jury could infer that defendant was aware of, and even condoned, Capps's actions to interfere with the investigation. Also, given evidence that Capps purchased a vibrator that defendant then used to abuse the victim, any argument that such evidence was extraneous to the case is unpersuasive.

Essentially, defendant seeks to exclude this evidence merely because it was indicative of guilt, not because it was unfairly prejudicial. Defendant has not established plain error affecting substantial rights. Because any objection to the evidence would have been futile, defense

counsel is not ineffective for failing to raise a meritless objection. *People v Unger*, 278 Mich App 210, 256; 749 NW2d 272 (2008). Nor has defendant demonstrated that remanding for an evidentiary hearing is warranted.

## III. SEPARATION OF POWERS

### A. STANDARD OF REVIEW

Defendant next contends that the mandatory 25-year minimum sentence set forth in MCL 750.520b(2)(b) violates the separation of powers doctrine. Because defendant did not challenge the statutory mandatory minimum sentences below based on a separation of powers ground, this challenge is unpreserved.[2] Therefore, our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

### B. ANALYSIS

MCL 750.520b(2)(b) provides that first-degree criminal sexual conduct "[f]or a violation that is committed by an individual 17 years of age or older against an individual less than 13 years of age [is punishable] by imprisonment for life or any term of years, but not less than 25 years."

"Statutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent." *People v Russell*, 266 Mich App 307, 310; 703 NW2d 107 (2005) (quotation marks and citation omitted). Furthermore, the Michigan Constitution provides: "The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." Const 1963, art 3, § 2. It also provides that "[t]he legislature may provide for indeterminate sentences as punishment for crime and for the detention and release of persons imprisoned or detained under such sentences." Const 1963, art 4, § 45. Thus, "the ultimate authority to provide for penalties for criminal offenses is constitutionally vested in the Legislature." *People v Hegwood*, 465 Mich 432, 436; 636 NW2d 127 (2001). See also *People v Raihala*, 199 Mich App 577, 579; 502 NW2d 755 (1993) ([T]the power to establish sentences, including indeterminate sentences, is an exclusively legislative function.").

"It is, accordingly, the responsibility of a circuit judge to impose a sentence, but only within the limits set by the Legislature." *Hegwood*, 465 Mich at 437 (emphasis omitted). "[T]here are offenses with regard to which the judiciary has no sentencing discretion, offenses about which discretion is sharply limited, and offenses regarding which discretion may be exercised under the terms set forth in the sentencing guidelines legislation." *Garza*, 469 Mich at 434.

---

[2] Although defendant raised a challenge to the mandatory minimum, he did not clearly articulate a separation of powers challenge.

When enacting MCL 750.520b(2)(b), the Legislature used its constitutionally-vested authority to mandate a 25-year mandatory minimum sentence for a first-degree criminal sexual conduct conviction where the offender is 17 years of age or older and the victim is less than 13 years of age. *Hegwood*, 465 Mich at 436. The Legislature's retention of some sentencing discretion does not offend the separation of powers doctrine. Defendant has not demonstrated plain error affecting substantial rights. *Carines*, 460 Mich at 763.

## IV. STANDARD 4 BRIEF

### A. STANDARD OF REVIEW

In his Standard 4 brief, defendant raises numerous claims of ineffective assistance of counsel. Whether a defendant received effective assistance of counsel is a mixed question of fact and law, as a "trial court must first find the facts and then decide whether those facts constitute a violation of the defendant's constitutional right to effective assistance of counsel." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A trial court's factual findings are reviewed for clear error, and questions of constitutional law victim are reviewed de novo. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). When reviewing a claim of ineffective assistance of counsel that has not been preserved for appellate review, a reviewing court is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "To establish ineffective assistance of counsel, a defendant must show: (1) that the attorney's performance was not based on strategic decisions, but was objectively unreasonable in light of prevailing professional norms; and (2) that, but for the attorney's error, a different outcome was reasonably probable." *People v Hunter*, 493 Mich 1015; 829 NW2d 871 (2013).

Defendant also raises several other challenges, all of which he failed to raise below. We review these claims for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

#### 1. INVESTIGATION

Defendant first contends that he was denied the effective assistance of counsel because his counsel failed to investigate witnesses, particularly Alisa Dee, Bailey Dee, Jessica Cooper, Kaelin Terrell, and defendant's son.

Defense counsel has a duty to make a reasonable investigation. *People v Grant*, 470 Mich 477, 485; 684 NW2d 686 (2004). "The failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense. Similarly, the failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (quotation marks, brackets, and citations omitted).

It is not apparent from the record that defense counsel failed to investigate or interview potential witnesses who could support defendant's theory of the case. In fact, the record contains very little description of what defense counsel did, or did not do, before trial. Although defendant attaches a number of affidavits to his Standard 4 brief on appeal, they are not part of

the lower court record and cannot be considered. *People v Seals*, 285 Mich App 1, 21; 776 NW2d 314 (2009).

Moreover, even if we were to consider these documents, none of the proposed witnesses offer any factual support for defendant's claim that defense counsel failed to conduct a reasonable investigation. Defendant also submits a self-serving document titled "affidavit." Yet, it does not appear to be properly notarized, nor otherwise authenticated. An "unnotarized statement fails to meet the procedural requirements of MCR 7.211(C)(1). That is, not being notarized or otherwise having been taken before a person having authority to administer an oath or affirmation, the document carries no more weight than a letter outlining defendant's complaints about his trial counsel. And as such, defendant failed to make a sufficient offer of proof of the evidence to be established at a hearing." *People v Ybarra*, 493 Mich 862; 820 NW2d 908 (2012) (Zahra, J. concurring). See also *Sherry v E Suburban Football League*, 292 Mich App 23, 31; 807 NW2d 859 (2011).

Defendant has not established the factual predicate for his claim that defense counsel failed to conduct a reasonable investigation. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999) ("[I]t is important to note that defendant has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel[.]"). Defendant's claim fails.

## 2. RIGHT TO TESTIFY

Defendant next claims that defense counsel failed to spend enough time with him and lacked an understanding of how to advise him regarding his decision not to testify. We again disagree.

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v Bonilla-Machado*, 489 Mich 412, 419; 803 NW2d 217 (2011). At trial, defendant informed the court, while under oath, that he decided not to testify based on his conversations with defense counsel. He also stated that no one forced him to make the decision and that he did not have any questions related to the decision. Contrary to defendant's self-serving claims on appeal, nothing in the record demonstrates that the time defense counsel spent with defendant was inadequate. Rather, the lower court record demonstrates defense counsel visited defendant approximately six times.

Moreover, defendant fails to establish how, with additional time, there is a reasonable probability that he would have testified or that the outcome of the trial would have been different. Defendant has not demonstrated that he was prejudiced by virtue of defense counsel's representation.

## 3. EXHIBITS

Defendant next contends that defense counsel was ineffective when failing to exhibit the size and allegedly unique characteristics of defendant's penis. We disagree.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant offers no evidence to overcome the strong presumption that defense counsel's decision not to exhibit defendant's penis was strategic. *Id.* Defense counsel may have reasonably concluded that calling Capps to testify that defendant's penis was much larger than her daughter described, and contained more moles, was a preferable method.

Moreover, aside from his self-serving claims, defendant offers no evidence to contradict the victim's testimony or to corroborate Capps's testimony. Defendant cannot establish that, but for defense counsel's alleged failure to exhibit defendant's penis, the outcome of the trial would have been different.

## C. SEXUAL PHOTOGRAPHS & MEDICAL RECORDS

Defendant also challenges the admission photographs of sexual aids retrieved from the victim's laptop and medical records from the victim's visit to the general practitioner.

Defendant did not object to these exhibits at trial. In fact, defense counsel stated that he had no objection to their admission. Waiver is "the intentional relinquishment or abandonment of a known right." *Kowalski*, 489 Mich at 503 (quotation marks and citation omitted). "When defense counsel clearly expresses satisfaction with a trial court's decision, counsel's action will be deemed to constitute a waiver." *Id.*

Moreover, even if we were to review this issue, the trial court did not plainly err in admitting the evidence. Even if erroneously admitted, defendant cannot establish that the admission of this evidence affected the outcome of the trial. *Carines*, 460 Mich at 763.

Nor was defendant denied the effective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 55-56; 826 NW2d 136 (2012). As the prosecution argues, defense counsel could have reasonably decided not to object to the admission of the medical report because it demonstrated Capps's concern for the victim, showed that the victim was sexually active, and revealed no signs of abuse. See *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995) (There are times when it is better not to object and draw attention to impropriety). The images of sexual aids also contributed to the defense theory that the victim was sexually active. See *id.*

## D. MEDICAL EXAMINATION

Next, defendant asserts error in a police detective's testimony regarding the police standard for when to seek an examination by a sexual assault nurse examiner (SANE).

As the prosecutor argues, the detective was not qualified as an expert witness. MRE 701 governs the admissibility of lay opinion testimony, and provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

In addition, MRE 602 provides that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

The detective's testimony was helpful for the jury's understanding of why there was no physical evidence of the crime, such as DNA evidence. Specifically, the detective testified that the police do not request a SANE examination if more than 72 hours have passed from the sexual assault because DNA evidence generally is lost after that time. The testimony was not dependent on scientific, technical, or other specialized knowledge, but rather, was testimony from anyone with personal knowledge of the police procedure.

Thus, defendant has not established it was plain error to admit this evidence. Nor was defense counsel ineffective for failing to raise a futile objection to this properly admitted evidence. *Unger*, 278 Mich App at 256.

### E.  NOTICE OF CHARGES

Defendant next claims that he lacked notice of the charges against him and defense counsel was ineffective for failing to request a bill of particulars. We disagree.

"A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence." *In re Oliver*, 333 US 257, 273; 68 S Ct 499; 92 L Ed 682 (1948). A criminal defendant's right to adequate notice of the charge against him is derived from the Sixth Amendment, as applied to the states through the Due Process Clause of the Fourteenth Amendment. *People v Darden*, 230 Mich App 597, 600; 585 NW2d 27 (1998). "[T]he constitutional notice requirement is not some abstract legal technicality requiring reversal in the absence of a perfectly drafted information. Instead, it is a practical requirement that gives effect to a defendant's right to know and respond to the charges against him." *Id.* at 601. Whether the defendant received due process depends on the facts of each case. *People v McGee*, 258 Mich App 683, 700; 672 NW2d 191 (2003).

Defendant received adequate notice of the charges against him. According to the charging document, defendant was accused of three counts of first-degree criminal sexual conduct on the basis of fellatio, cunnilingus, and penis-vagina penetration. Defendant claims that he only was aware of these allegations, not the other sexual abuse described at trial. However, more than a month before trial, the prosecutor filed notices of intent to introduce other-acts evidence pursuant to MCL 768.27a. These notices described hugs given by defendant to the victim with a "boner," defendant's intrusion on the victim while bathing, defendant's exposure of his penis to the victim, daily penis-vagina penetration from approximately February 22, 2013, to March 31, 2013, defendant's practices of smacking the victim on the buttocks, dry humping her, grabbing her breasts, and defendant's photography and videoing of his sexual abuse of the victim. These facts establish that defendant was aware of the charged crimes as well as the victim's recollection of the continuum of abuse.

Defendant has not established plain error affecting his substantial rights with respect to his constitutional right to notice. Because defendant had sufficient notice, defense counsel was not ineffective for failing to request a bill of particulars for what would have been a cumulative description of the essential facts of the case. MCR 6.112(E) ("The court, on motion, may order

the prosecutor to provide the defendant a bill of particulars describing the essential facts of the alleged offense"); MCL 767.44. Defendant is not entitled to relief.

## F. DISCOVERY VIOLATIONS

Defendant next contends that the prosecution improperly failed to disclose several of the victim's personal items recovered from a blue backpack during the consent search, as well as various other documents like pages from the victim's diary.

" '[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To demonstrate a *Brady* violation, a defendant must demonstrate that: (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) it is material. *Id.*

Defendant has failed to establish that the prosecution possessed any of the evidence he references on appeal, including text messages, clothing, and documents allegedly composed by the victim. Capps testified that after the victim made the allegations against defendant, Capps and defendant took some of the victim's personal items when searching her room and stored them in the blue backpack. Defendant consented to a search of the home for the blue backpack.

At trial, the detective merely testified about recovering a phone, Nintendo DS, and laptop. There is no search warrant inventory in the lower court record evidencing the removal of any other personal items. Thus, nothing in the record establishes that the police were aware of this evidence or confiscated it at the time of the search, nor that they refused to turn it over to the defense. Defendant has not demonstrated that the prosecution suppressed evidence. *Chenault*, 495 Mich at 149.

Nor has defendant established the materiality element. *Id.* "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Chenault*, 495 Mich at 157 (quotation marks and citation omitted). Even in the absence of this evidence, defendant received a trial that resulted in verdict worthy of confidence because the cumulative effect of the evidence was not material. *Id.* Defendant is not entitled to relief.

## G. PROSECUTORIAL MISCONDUCT

Defendant next raises several instances of alleged prosecutorial misconduct. We find these arguments to be meritless.

Prosecutors are given great latitude with regard to their arguments and conduct. *Bahoda*, 448 Mich at 282. "They are free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Id.* (quotation marks, citation, and brackets omitted). "[P]rosecutors may use hard language when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms. Emotional language may be

used during closing argument and is "an important weapon in counsel's forensic arsenal." *People v Ullah*, 216 Mich App 669, 678-679; 550 NW2d 568 (1996) (quotation marks omitted).

Defendant first contends that the prosecution improperly appealed to the jury's sympathy when it asked the jurors to recall instances of their first experiences. Specifically, the prosecutor explained to the jury that the victim would be testifying about the first time that defendant had abused her, and the jury could infer that like other first experiences, this one would have been memorable. Reviewing the statements as a whole, we find that the prosecution merely was arguing why the evidence would show that the victim was credible.

In addition, defendant claims that the prosecution improperly argued that the victim was a virgin. Yet, the prosecution merely discussed the victim's credible memory of the first time defendant abused her. Moreover, even if the prosecutor had referenced the victim's virginity, the victim testified that she had never had sex before defendant abused her. Prosecutors are permitted to argue the evidence to be introduced at trial. *Bahoda*, 448 Mich at 282.

In any event, the trial court's instructions that the jury decide the verdict based on the evidence, and that the attorney's statements were not evidence, cured any error. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Defendant next claims that the portion of the prosecution's opening statement that "[t]he Defendant told her, nobody has to know; if you tell anybody, I will deny it," did not correspond to the evidence admitted at trial. During the examination of the victim, the prosecutor asked, "Did he say anything to you about telling?" The victim replied, "No. He -- well, later on, while -- after he did it for a while, he told me -- I asked him if I ever told, what he [sic] do. He said he -- he wouldn't say he did it, he'd deny it."

"[T]he purpose of an opening statement is to tell the jury what the advocate will attempt to prove." *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 503; 668 NW2d 402 (2003); MCR 2.507(A). Throughout trial, defendant argued that, if victim had been abused, she would have reported it earlier. In its opening statement, the prosecution proposed to show that the victim's reasons for failing to report the abuse earlier included her doubt that her mother would believe her and defendant's threats that he would deny the allegations. Although the victim's testimony did not mirror the prosecutor's opening statement exactly, the jury could nevertheless infer from the testimony that the victim delayed reporting because of the reasons the prosecution proposed in its opening statement. Furthermore, the trial court's instructions cured any error. *Ackerman*, 257 Mich App at 449.

## H. QUESTIONING OF CAPPS

Defendant also claims error warranting reversal in the admission of evidence from Capps regarding the advice she received from counsel and her refusal to answer police questions during an interview. We disagree.

To the extent that defendant is asserting a violation of the Fifth Amendment right to counsel, this claim fails. Defendant cannot assert that right as a third party in this case, *Kowalski v Tesmer*, 543 US 125, 129-130; 125 S Ct 564; 160 L Ed 2d 519 (2004), and there is no evidence

that Capps was in custody or that the right to counsel had attached during her interview with the police, *People v McRae*, 469 Mich 704, 715-716; 678 NW2d 425 (2004), *People v Mendez*, 225 Mich App 381, 383; 571 NW2d 528 (1997). To the extent that defendant claims a violation of the attorney-client privilege, Capps waived any privilege when testifying at trial regarding the conversation she had with her attorney. *People v Bragg*, 296 Mich App 433, 466; 824 NW2d 170 (2012).

Defendant also contends that his counsel was ineffective for failing to object to this evidence. Again, defendant fails to overcome the strong presumption of strategy. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d 246 (2002). There are times when it is better not to object and draw attention to impropriety. *Bahoda*, 448 Mich at 287 n 54. Instead, defense counsel made the strategic choice to emphasize that Capps's decision not to answer the detective's questions was based on the advice from counsel, which he wished all of his clients would follow.

Finally, defendant cannot establish that a different result was reasonably probable given that the victim's testimony is sufficient to support the convictions. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *People v Drohan*, 264 Mich App 77, 89; 689 NW2d 750 (2004); MCL 750.520h.

## I. CPS INVESTIGATION

Lastly, defendant contends that the prosecution improperly introduced extrinsic evidence regarding a collateral matter, namely, the CPS investigation following the victim's allegations.

MRE 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

However, even if improper, defendant has not carried "his burden of establishing that it was more probable than not that the alleged error affected the outcome of the trial." *People v Spanke*, 254 Mich App 642, 645; 658 NW2d 504 (2003). Nor has defendant shown that any alleged deficiency in his attorney's performance relating to this issue altered the outcome of the trial. *Unger*, 278 Mich App at 256-257. Accordingly, defendant is not entitled to relief.

## V. CONCLUSION

Defendant has not demonstrated error warranting reversal in the admission of evidence from Capps or the imposition of the mandatory minimum sentence. Nor has defendant established that he was denied the effective assistance of counsel or that a remand for an evidentiary hearing is warranted. We also find no error warranting reversal regarding the admission of evidence pertaining to the sexual photographs, the victim's medical records, the

victim's medical examination, or defendant's notice of the charges against him.  Further, there were no discovery violations, prosecutorial misconduct relating to the questioning of Capps, or errors regarding the CPS investigation that require reversal.  Finally, we have reviewed all remaining claims and find them to be without merit.  We affirm.

/s/ Karen M. Fort Hood
/s/ Henry William Saad
/s/ Michael J. Riordan