PEOPLE v ULLAH

Docket No. 180408. Submitted April 17, 1996, at Detroit. Decided May 17, 1996, at 9:25 A.M.

Abruse Ullah, Jr., was convicted by a jury in the Recorder's Court of Detroit, Jeffrey G. Collins, J., of two counts of first-degree criminal sexual conduct. The victim, the defendant's estranged wife, testified that the defendant assaulted her, forced her to take off her clothes, and forced her to engage in sexual intercourse. The defendant, while admitting that he slapped the victim, denied making any further assault on her, and testified that the sexual intercourse was consensual and at her request. During the course of the victim's testimony, the jury was permitted to hear testimony concerning prior assaults made by the defendant on the victim. The defendant appealed.

The Court of Appeals *held*:

1. Because the testimony concerning the prior assaults was not necessary to show motive, intent, preparation, scheme or plan, or any element of the charged offense and could not be used to show the defendant's character, the testimony was not admissible pursuant to MRE 404(b) even if the prosecution had given the required notice of the intent to use such evidence. Given the trial court's finding that this prior acts testimony was more prejudicial than probative, there exists the real possibility that the jury may have given undue weight to this prejudicial testimony. Under these circumstances, the introduction of that testimony denied the defendant a fair trial, and, accordingly, the defendant must be afforded a new trial free from that prejudice.

2. The trial court's instruction to the jury relative to the issue of consent did not improperly shift the burden of proof.

3. None of the twenty alleged instances of misconduct by the prosecution relating to statements made during opening and closing arguments support the conclusion that the defendant was denied a fair trial, particularly when viewed in light of the court's cautionary instruction that the arguments of counsel are not to be treated as evidence.

4. The record clearly establishes that the jury found the defendant guilty of first-degree criminal sexual conduct.

5. The defense counsel's repeated failures to make timely and necessary objections relative to the testimony concerning the prior assaults were serious errors that prejudiced the defendant and denied him his constitutional right to effective assistance of counsel.

Reversed and remanded for a new trial.

EVIDENCE — OTHER ACTS — ADMISSIBILITY.

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person for the purpose of showing that a later act was in conformity with the prior act [MRE 404(b)].

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Janet A. Napp*, Assistant Prosecuting Attorney, for the people.

*Carl Ziemba*, for the defendant on appeal.

Before: TAYLOR, P.J., and FITZGERALD and P. D. HOUK,* JJ.

TAYLOR, P.J. Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f) (force or coercion used to accomplish sexual penetration causing personal injury to the complainant), arising out of a sexual assault upon his estranged wife.[1] Defendant received concurrent sentences of sixteen to forty years in prison. Defendant appeals as of right. We reverse and remand.

The complainant testified that on August 4, 1993, she and defendant were in a building where they both

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] 1988 PA 138 amended MCL 750.520*l*; MSA 28.788(12) and abolished spousal immunity in prosecutions for criminal sexual conduct statutes. Section 520*l* now provides that a person may be convicted of a criminal sexual conduct crime "even though the victim is his or her legal spouse."

worked and that defendant asked her to come upstairs for a talk. Defendant grabbed her arm and pulled her up the stairs. When they reached the top of the stairs, the complainant asked defendant what he wanted, whereupon he punched the complainant in the face, stomped on her stomach with his street shoes, dragged her into another room, and began beating her again. She stated that defendant then demanded that she remove her clothes and started taking her clothes off when she refused. The complainant indicated that she was screaming during the assault, but that no one came to her rescue. After taking the complainant's clothes out of the room, defendant returned and forced her to engage in sexual intercourse. After defendant left the room, the complainant telephoned the police, reporting that she was being held hostage, and subsequently filed a police report. At the time of the assault, defendant and the complainant had been married only a few months. They were, however, separated.

Defendant testified that he called the complainant up to the office to discuss his suspicions that she was dating someone else and had been spying on him. He admitted slapping her with force twice, but denied stomping on her. Defendant testified that he had apologized for the slaps when he saw that her eye had begun to swell and that he then began crying. Following this, he stated that the complainant then asked him to make love to her and that he complied. There were no other witnesses to the sexual assault, making the trial primarily a credibility contest.

Defendant contends that he was denied his right to a fair and impartial trial because of the admission of testimony concerning other wrongful acts. We agree.

The prosecutor asked the complainant if she had moved out of the marital home. She indicated that she had moved out two days after marrying defendant, because he had knocked her down and beat her in such a manner that everything went black. When asked if she had called the police on that occasion, she said that defendant had blocked the door with a piece of furniture and had watched her "all night with a gun and told me he would blow my brains out if I [had dared] try to leave." She also said that her face had become all swollen and black and blue as a result of the beating. She further testified that, after a time, defendant had let her out of the bedroom to talk to someone at the door but only after he had made her put on makeup and sunglasses. She then had run out of the house and had jumped into that person's car and had gone to a hospital emergency room. When asked if she had gone back to live with defendant at a later time, defense counsel objected to "this whole line of questioning." The court sustained the belated objection. The prosecutor then asked the complainant if she had had any other physical encounters with defendant, and she said that there had been and that it had occurred when she had thrown a surprise birthday party for defendant. As she began preparing to give details regarding the incident, the court excused the jury and asked defense counsel if he had an objection. Defense counsel said that he did object. The prosecutor then agreed to focus on the date of the event that led to the charges. The jury, however, heard about the first beating a second time when, during cross-examination, the complainant stated that she had fled the house on February 13 because defendant had "beat the living hell out of me" and fur-

ther stated that she had fled the home again on April 30, which was the day of defendant's birthday party. The court sua sponte ordered these comments stricken. When defense counsel asked the complainant why she had not gone to the hospital after the incident leading to the charges, she stated that she had been to the hospital previously "on beatings."

Generally, we review a trial court's decision to admit evidence for an abuse of discretion. *People v Bahoda*, 448 Mich 261, 289; 531 NW2d 659 (1995). An abuse of discretion exists when the court's decision is so grossly violative of fact and logic that it evidences perversity of will, defiance of judgment, and the exercise of passion or bias. *Id.* at 289, n 57. Stated somewhat differently, an abuse of discretion also exists when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling. *People v Taylor*, 195 Mich App 57, 60; 489 NW2d 99 (1992). In the case at bar, however, the court did not make a decision to admit the challenged evidence. Indeed, after a belated objection was raised, the court questioned how the evidence was relevant and said that it found the testimony more prejudicial than probative. When the prosecutor asked the complainant another question that would have provided additional bad-acts testimony, the court sua sponte excused the jury to see if defense counsel had an objection. The prosecutor claimed he was offering the evidence under MRE 404(b) to show defendant's character. The court correctly noted that MRE 404(b) specifically does not allow evidence of other bad acts to show the character of a defendant. The court then found the other

bad-acts testimony to be more prejudicial than probative.

The trial court has a duty to limit the introduction of evidence and the arguments of counsel to relevant and material matters, MCL 768.29; MSA 28.1052, and to assure that all parties that come before it receive a fair trial. *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103, n 9; 330 NW2d 638 (1982). Therefore, we commend the trial court's decision to intervene and prevent the prosecutor from eliciting a second round of bad-acts testimony and for striking the complainant's later testimony regarding the two times she fled the house months before the charged incident. However, we find that the court's action simply came too late because the jury had already heard unfairly prejudicial testimony regarding a brutal incident that occurred two days after defendant and the complainant had married that was unrelated to the charged offenses.

Pursuant to MRE 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence may, however, be admissible to show a motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when material. *People v VanderVliet*, 444 Mich 52; 508 NW2d 114 (1993), MCL 768.27; MSA 28.1050. However, pursuant to MRE 404(b)(2), the prosecution must provide reasonable notice before trial, or during trial if the court excuses pretrial notice on good cause, before it may seek to admit such evidence. Here, the prosecutor did not provide notice at any time that it intended to elicit such evidence.

It is further the case that other-acts evidence is not admissible simply because it does not violate MRE 404(b). The trial court must also determine whether the evidence is relevant under MRE 402 and whether the danger of unfair prejudice substantially outweighs the probative value of the evidence under MRE 403. *VanderVliet, supra* at 74-75. In the case at bar, the trial court questioned the relevance of the bad-acts testimony and determined that it was more prejudicial than probative after the jury had already heard it. We agree with this determination. On this record the testimony regarding the prior beating was not logically relevant to an element of the charged offenses. The prior beating was not accompanied by a demand from defendant for sex. We also find that the prior beating was not relevant to the issue of consent to sexual intercourse because the complainant never testified that she, aware of how violent he could get from the earlier incident, stopped resisting him. If the complainant had testified that she fearfully submitted, the earlier beating would be relevant to vitiate the apparent consent. That situation is not found here because the complainant's resistance never wavered, and, from reviewing her testimony, we can conclude that defendant was, on this occasion, even more physically violent when he demanded sex than he had been when he physically assaulted her months earlier. We also note that the trial court determined, after the fact, that the testimony regarding the first beating was more prejudicial than probative. As stated in *Bahoda, supra* at 291, such determinations are best left to a contemporaneous assessment of the presentation, credibility, and effect of the testimony by the trial judge.

Error in the admission of evidence is not grounds for reversal where the error was harmless. *People v Robinson*, 386 Mich 551, 563; 194 NW2d 709 (1972). Here, however, we are satisfied that the error was simply too prejudicial to be deemed harmless. *People v Stanaway*, 446 Mich 643, 694; 521 NW2d 557 (1994). Given the prejudicial nature of the inadmissible bad-acts testimony in this swearing contest, we are unable to conclude that the conviction of defendant was not a miscarriage of justice. *People v Travis*, 443 Mich 668, 686; 505 NW2d 563 (1993). The introduction of this bad-acts testimony denied defendant a fair trial because it may have led the jury to convict him because he was, at least, unsavory and also may have diverted the jury from an objective appraisal of defendant's guilt or innocence for the crimes charged. *People v Robinson*, 417 Mich 661, 664-665; 340 NW2d 631 (1983).

We find that defendant is entitled to a new trial under these circumstances where (1) the prosecutor did not move to admit this evidence in accordance with MRE 404(b)(2), (2) the prosecutor cited an improper purpose for admitting the bad-acts evidence, (3) such evidence was not logically relevant to an element of the charged offenses, (4) the trial court found the evidence more prejudicial than probative, and (5) the jury may have given undue weight to this prejudicial testimony.

Defendant further argues that the court improperly shifted the burden of proof when it instructed the jury regarding the issue of consent. We disagree. Defendant did not object to this instruction. Therefore, appellate review is foreclosed absent manifest injustice. *People v Van Dorsten*, 441 Mich 540, 544-

545; 494 NW2d 737 (1993). In other words, relief will be granted absent an objection only in cases of manifest injustice. *People v Kelly*, 423 Mich 261, 272; 378 NW2d 365 (1985).[2] Further, we review jury instructions in their entirety to determine if the court erred so as to require reversal. *People v Davis*, 199 Mich App 502, 515; 503 NW2d 457 (1993). Even if the instructions are imperfect, reversal is not required if they presented the issues to be tried and sufficiently protected the rights of the defendant. *Id.*

The trial court gave an instruction that was virtually identical to CJI2d 20.27. The Michigan Criminal Jury Instructions, however, do not have the official sanction of the Michigan Supreme Court. *People v Petrella*, 424 Mich 221, 277; 380 NW2d 11 (1985). Their usage is not required and trial judges should examine them carefully to ensure their accuracy and appropriateness to cases before them. *Id.* Indeed, MCL 768.29; MSA 28.1052 provides that it is the duty of the trial court to instruct the jury with regard to the law applicable to the case. Similarly, MCR 6.414(F) provides that the court must instruct the jury as required and as appropriate.

In *People v Thompson*, 117 Mich App 522, 528-529; 324 NW2d 22 (1982), this Court found that an instruction had improperly shifted to a defendant the burden of proof regarding consent and held that if, on remand, the evidence warranted a consent instruction, the court should indicate that the burden is on

---

[2] Examples of such injustice include when a court effectively removes a possible verdict from a jury's consideration, when a court rules as a matter of law with respect to an element of the offense, when a court repeatedly misidentifies joint defendants, and when a court repeatedly misdefines self-defense in a murder trial. *Kelly, supra* at 272, n 3.

the prosecution to disprove consent beyond a reasonable doubt. The instruction given in the case at bar stated that if the jury found that the evidence about the defense of consent raised a reasonable doubt concerning whether the complainant consented to the acts freely and willingly that it "must find the defendant not guilty." This instruction did not state that defendant had the burden of proving or establishing a reasonable doubt. The offending instruction in *Thompson* required acquittal only if the jury found the elements of consent proved, whereas the instruction given in the case at bar required acquittal if the jury found the evidence relating to consent raised a reasonable doubt concerning whether the complainant consented to the acts. We find no error requiring reversal.

Defendant next alleges twenty specific instances of prosecutorial misconduct. Defendant challenges one remark made during the prosecutor's opening statement, ten remarks made during the prosecutor's initial closing argument, and nine additional comments contained in the prosecutor's rebuttal closing argument. Defendant argues that he is entitled to a new trial on the basis of individual and cumulative error. A trial court has the duty to limit the arguments of counsel to relevant and material matters. MCL 768.29; MSA 28.1052. Prosecutors also have a duty to see that defendants receive a fair trial while attempting to convict those guilty of crimes. *People v Duncan*, 402 Mich 1, 17; 260 NW2d 58 (1977). Nevertheless, prosecutors may use "hard language" when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms. *People v Phillips*, 112 Mich App 98, 114; 315 NW2d 868 (1982),

affirmed sub nom *People v Wesley,* 421 Mich 375; 365 NW2d 692 (1984). Emotional language may be used during closing argument and is "an important weapon in counsel's forensic arsenal." *People v Mischley* 164 Mich App 478, 483; 417 NW2d 537 (1987). However, if counsel exceeds the proper bounds of argument, a judge should interrupt to correct counsel and to take any curative measures that are necessary. *Reetz, supra* at 103, n 9; *People v Farrar,* 36 Mich App 294, 299-300, n 6; 193 NW2d 363 (1971). While a judge is required to appear impartial lest his appearance influence a jury, a judge is not a mere referee. *People v Hardison,* 441 Mich 913 (1993).

Defendant did not object to eighteen of the twenty alleged instances of prosecutorial misconduct at trial. Appellate review of improper prosecutorial remarks is generally precluded absent an objection because it deprives the trial court of an opportunity to cure the error. *People v Stanaway, supra* at 687. Thus, a well-tried, vigorously argued case ought not be overturned because of isolated improper remarks that could have been cured had an objection been lodged. *Duncan, supra* at 17. An appellate court will still reverse if a curative instruction could not have eliminated the prejudicial effect of the remarks or where failure to review the issue would result in a miscarriage of justice. Stanaway, *supra* at 687. See, e.g., *People v Meir,* 67 Mich App 534, 538; 241 NW2d 280 (1976), *People v Green,* 74 Mich App 601, 607; 254 NW2d 788 (1977), opinion on remand 79 Mich App 186; 261 NW2d 253 (1977), *People v Knolton,* 86 Mich App 424, 428; 272 NW2d 669 (1978), and *People v Foster,* 175 Mich App 311, 317-318; 437 NW2d 395 (1989), disapproved in

part *People v Fields*, 450 Mich 94, 115, n 24; 538 NW2d 356 (1995).

Defendant urges this Court to consider *People v Hurt*, 211 Mich App 345; 536 NW2d 227 (1995), in deciding this issue. We note, however, that this is one of eighteen cases[3] in which the Michigan Supreme Court has entered an order stating "The Court of

---

[3] The other seventeen "depublished" Court of Appeals opinions are:

*Oliver v Nat'l Gypsum Co, Cement Division*, 187 Mich App 610; 468 NW2d 312 (1991), depublished at 447 Mich 999 (1994).

*Bernthal v Aetna Casualty & Surety Co*, 195 Mich App 501; 491 NW2d 236 (1992), depublished at 444 Mich 1216 (1994).

*People v Sledge*, 198 Mich App 218; 497 NW2d 582 (1993), depublished at 444 Mich 863 (1993).

*American Nat'l Fire Ins Co v Frankenmouth Mutual Ins Co*, 199 Mich App 202; 501 NW2d 237 (1993), depublished at 445 Mich 91; 516 NW2d 52 (1994).

*People v Leary (On Remand)*, 198 Mich App 282; 497 NW2d 922 (1933), depublished at 446 Mich 866 (1994).

*People v Sledge (On Rehearing)*, 200 Mich App 326; 503 NW2d 672 (1993), depublished at 444 Mich 863 (1993).

*Ginther v Ovid-Elsie Area Schools*, 201 Mich App 30; 506 NW2d 523 (1993), depublished at 444 Mich 1218 (1994).

*People v Lopez (After Remand)*, 202 Mich App 437; 510 NW2d 195 (1993), depublished at 447 Mich 427; 526 NW2d 584 (1994).

*People v Brooks (On Remand)*, 203 Mich App 199; 511 NW2d 710 (1993), depublished at 445 Mich 926 (1994).

*Gingold v Berkley Clinic, PC*, 204 Mich App 148; 514 NW2d 469 (1994), depublished at 448 Mich 933 (1995).

*Wieringa v Blue Care Network*, 207 Mich App 142; 523 NW2d 872 (1994), depublished at 451 Mich 874 (1996).

*Jishi v General Motors Corp (On Remand)*, 207 Mich App 429; 526 NW2d 24 (1994), depublished at 450 Mich 861 (1995).

*Mapes v Auto Club Ins Ass'n*, 208 Mich App 5; 527 NW2d 22 (1994), depublished at 450 Mich 914 (1995).

*People v Miller*, 208 Mich App 495; 528 NW2d 819 (1995), depublished at 450 Mich 952 (1995).

*People v Premen*, 210 Mich App 211; 532 NW2d 872 (1995), depublished at 450 Mich 949 (1995).

*People v Jackson*, 213 Mich App 245; 539 NW2d 758 (1995), depublished at 451 Mich 885 (1996).

*Pigeon v Radloff*, 215 Mich App 438; 546 NW2d 655 (1996), depublished at 451 Mich 885 (1996).

Appeals opinion is to have no precedential force or effect." 450 Mich 958 (1995). Accordingly we do not consider *Hurt*. We also note that *People v Kulick*, 209 Mich App 258; 530 NW2d 163 (1995) (another recent Court of Appeals opinion that reversed a defendant's conviction on the basis of prosecutorial misconduct), is of no assistance because the Supreme Court remanded *Kulick* for reconsideration in light of *Bahoda* , 449 Mich 851 (1995), and this Court subsequently reversed its ruling on remand and affirmed the defendant's conviction in an unpublished opinion. Unpublished memorandum opinion of the Court of Appeals, issued August 15, 1995 (Docket No. 186555).

We have reviewed each of the alleged instances of prosecutorial misconduct and find almost all of them to have been proper argument. For example, during his initial closing argument the prosecutor attempted to rebut defendant's testimony that the complainant had been a good actress when she had testified by stating: "[H]e [defendant] is the biggest actor in this court. He should go to law school and defend O. J. Simpson." In response to an objection by defense counsel, the court stated "Quiet in the courtroom, please" and properly instructed the jury that the arguments of counsel are not evidence. Defendant did object to this argument, and, thus, we review the matter to determine whether the argument denied defendant a fair trial. *Bahoda, supra* at 267. We find that this comment did not deny defendant a fair trial. This was not a situation where a prosecutor com-

---

We also note that *Oliver, supra,* was cited as "binding precedent" in *Said v Rouge Steel Co,* 209 Mich App 150, 155; 530 NW2d 765 (1995), notwithstanding the fact that *Oliver* had been depublished four months previously.

pared a defendant with an infamous defendant.[4] On the one other occasion when defense counsel objected, the court properly instructed the jury that the jury's recollection of the testimony was controlling.

Defendant testified that he spoke with the complainant for eighteen straight hours on the telephone while he was in jail. When defendant called the complainant as a witness she denied that this had ever happened. Defendant claims the following related argument of the prosecutor was improper:

> Ladies and gentlemen, I don't know a single man in the world who can talk to his wife or girlfriend for 18 hours. Men just aren't like that. I've never met a man like that in my life. This guy [defendant] should be a used car salesman. Don't buy the lemon from this man.

After a careful review of the record, we conclude that no miscarriage of justice will result from our refusal to consider this unobjected-to comment because a cautionary instruction could have cured any impropriety in the remark. *People v Slocum*, 213 Mich App 239, 241; 539 NW2d 572 (1995). We are also

---

[4] Compare *People v Kelley*, 142 Mich App 671, 673; 370 NW2d 321 (1985), where the defendant's conviction was reversed because the prosecutor referred to John Wayne Gacey and there was a great likelihood that the jury would compare the defendant's character with Gacey's because the charge was criminal sexual conduct involving a young girl, and *People v Pullins*, 145 Mich App 414, 422-423; 378 NW2d 502 (1985), where this Court admonished the prosecutor not to equate defendant with Sirhan Sirhan or Charles Manson when discussing the presumption of innocence at retrial, with *People v Rowen*, 111 Mich App 76, 82-83; 314 NW2d 526 (1981), where the Court said that a prosecutor's noting that Jack Ruby had the same presumption of innocence as defendant even though Ruby shot Lee Harvey Oswald on television in front of millions of people was not improper, because it could be viewed as a comment on the strength of the prosecutor's case.

satisfied that the court's instruction to the jury that the arguments of counsel were not evidence dispelled any potential prejudice with respect to all the alleged instances of prosecutorial misconduct. *Bahoda, supra* at 281.

Defendant next contends that he was deprived of his rights to due process, a fair trial, and a jury trial when the jury foreperson returned a verdict that convicted him of no crime. We disagree. When a jury's verdict is uncertain, a defendant may be entitled to appropriate relief. In *People v Smith,* 383 Mich 576; 177 NW2d 164 (1970), the defendant was charged with five possible verdicts. Option two was "assault with intent to commit rape" and option four was "assault and battery." When the clerk questioned the jury, the foreman indicated that the jury had found the defendant guilty of "assault with intent." The trial court entered a judgment for assault with intent to rape. On appeal, the Supreme Court held that the only verdict that could be clearly deduced from the record was "assault with intent" and it affirmed the Court of Appeals judgment that had reduced the conviction to simple assault. In the case at bar, the jury foreperson was asked what the jury's verdict was relative to count I "criminal sexual conduct first-degree forced" and the foreperson answered "guilty of first-degree." The clerk then asked "criminal sexual conduct first-degree?" and the foreperson answered "first degree." The clerk then asked the jurors collectively and individually if they found defendant guilty of "criminal sexual conduct first-degree" and they responded affirmatively. The lower court record also contains a written verdict form signed by the foreperson with the "criminal sexual conduct, first-degree" box

checked. Defendant is not entitled to any relief because the jury's verdict may be clearly deduced by reference to the record, *People v Rand*, 397 Mich 638, 643; 247 NW2d 508 (1976), amended 399 Mich 1040 (1977), and is clearly shown by the written verdict form. *People v Miller*, 143 Mich App 274, 276; 372 NW2d 329 (1985). Defendant's reliance upon *People v Guidry*, 67 Mich App 653; 242 NW2d 461 (1976), is misplaced, because that case was reversed on appeal to the Michigan Supreme Court. See 399 Mich 803 (1977), and 400 Mich 804 (1977).

Finally, defendant contends that he was deprived of effective assistance of counsel at trial. We agree. After defendant was convicted, defendant's appellate counsel moved for an evidentiary hearing regarding this claim. The trial court denied the motion. Defendant has not appealed this ruling, apparently being satisfied that the alleged instances of ineffective assistance of trial counsel are adequately established by the existing record. Failure to hold an evidentiary hearing forecloses appellate review of a claim of ineffective assistance of counsel unless the record contains sufficient detail to support defendant's claim. *People v Barclay*, 208 Mich App 670, 672; 528 NW2d 842 (1995). If so, review is limited to the record. *Id.*

To find that a defendant's right to effective assistance of counsel was so undermined that reversal of an otherwise valid conviction is justified, a defendant must show that counsel's performance fell below an objective standard of reasonableness and that the representation deprived him of a fair trial. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). A defendant must also show that, but for counsel's unprofessional errors, there is a reasonable

probability that the result of the proceeding would have been different. *People v LaVearn*, 448 Mich 207, 216; 528 NW2d 721 (1995). Most recently, in *People v Johnson*, 451 Mich 115, 122; 545 NW2d 636 (1996), the Supreme Court held that the defendant was denied his right to effective assistance of counsel because trial counsel failed to call several exculpatory witnesses. The Court held that the exculpatory evidence not presented to the jury was so substantial that it could have changed the outcome of the trial. *Id.*

Defendant argues that counsel was ineffective at trial because counsel failed to make a timely objection to the complainant's bad-acts testimony, failed to object to improper prosecutorial arguments, and failed to object to the jury instruction regarding consent. Counsel's failure to object to the consent jury instruction was not ineffective, because the instruction was proper. Counsel's failure to object to the alleged instances of prosecutorial misconduct was not ineffective, because none of the challenged remarks deprived defendant of a fair trial and because the lack of an objection may have been trial strategy. In *Bahoda, supra* at 287, n 54, the Supreme Court stated that there are times when it is better not to object and to draw attention to an improper argument.

We do find, however, that counsel's failure to enter a timely objection to the bad-acts testimony was a serious error that prejudiced defendant. *Pickens, supra* at 303. Defense counsel failed to place a timely objection, failed to request that the testimony be stricken after the court indicated that it found the testimony more prejudicial than probative, failed to request that a cautionary instruction be given, and

failed to move for a mistrial. The prejudice from the bad-acts testimony was so substantial that it could have changed the outcome of this trial involving a credibility contest. *Johnson, supra.*

Reversed and remanded for a new trial.