# STATE OF MICHIGAN

# COURT OF APPEALS

MILDRED THOMAS,

Plaintiff-Appellee,

v

WOODWARD DETROIT CVS, LLC, doing
business as CVS PHARMACY #8031,

Defendant-Appellant.

UNPUBLISHED
October 24, 2017

No. 331486
Wayne Circuit Court
LC No. 13-011919-NO

Before: SHAPIRO, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals from a judgment entered after a jury verdict in this negligence action. We affirm the trial judge's denial of defendant's motion for judgement notwithstanding the verdict. We also affirm the trial judge's denial of defendant's motion for a new trial as to damages with the exception of those based upon past and future medical expenses. As to those elements of damage we remand for remittitur.

## I. FACTS AND PROCEDURAL BACKGROUND

While shopping at defendant's store, plaintiff asked for assistance with some folding metal chairs that were located on a top shelf. An employee attempted to manipulate that stack of chairs and they fell from the top shelf onto plaintiff's head. Plaintiff sued defendant's corporation which, though it contested fault, did not contest that if the jury found its employee at fault, it would be liable under respondeat superior.

At trial, plaintiff presented evidence that she suffered a traumatic brain injury causing significant cognitive dysfunction, memory and concentration problems as well as headache, and cervical pain. She also presented evidence that these injuries disabled her from working. Defendant moved for a directed verdict, arguing that plaintiff's claims sounded in premises liability rather than ordinary negligence and that the evidence established that the condition that caused plaintiff's injury was open and obvious.

The trial court denied defendant's motion. Thereafter, a jury found that defendant's employee was negligent and awarded plaintiff $25,000 for past economic damages for medical expenses, $250,000 for past economic damages for loss of earnings, and $250,000 for past

-1-

noneconomic damages for pain and suffering.  The jury also awarded plaintiff future economic damages for medical expenses of $2,068,000, future economic damages for lost earning capacity or wages of $806,000, and future noneconomic damages for pain and suffering of $1,217,000. Defendant subsequently filed a motion for judgment notwithstanding the verdict (JNOV), again repeating its argument that plaintiff's claims sounded in premises liability rather than negligence. Defendants also filed a motion for a new trial or remittitur, arguing that the jury's verdicts were grossly excessive, and were influenced by passion or prejudice.

The trial court denied defendant's motions and entered judgment after having reduced the future damages to present value.[1]

## II. DIRECTED VERDICT

Defendant contends that the trial court erred by denying its motion for a directed verdict in which it claimed that it had no duty to plaintiff based on the open and obvious danger doctrine.  We agree with the trial court that this motion was properly denied on both procedural and substantive grounds.[2]

The open and obvious danger doctrine does not apply to ordinary negligence claims. *Laier v Kitchen*, 266 Mich App 482, 490; 702 NW2d 199 (2005).  Plaintiff's complaint alleged ordinary negligence in the manner the store manager arranged and handled the stack of chairs, and that as a result, they fell on plaintiff.  In its motion for directed verdict and its JNOV motion, defendant argued that the claim was one of premises liability, not negligence, and so should be barred under the open and obvious danger doctrine.

As the trial court pointed out, the directed verdict motion was the first time defendant had argued this legal issue despite many opportunities to do so during the litigation.  The court correctly noted that: (1) a motion for summary disposition on these grounds could have been filed but was no longer timely, (2) the issue of premises liability was not newly discovered based on the evidence presented at trial, (3) the issue was not raised in the "joint pre-trial order," and as a result (4) plaintiff had no notice that the issue would be raised at trial and it would be prejudicial to plaintiff to open the issue after the close of plaintiff's proofs.

---

[1] After reduction to present value, the amount of damages was:  $510,384.97 for plaintiff's future loss of future earnings, $1,300,968.67 for future medical expenses and $765,779.89 for future non-economic damages.

[2] "This Court reviews de novo a trial court's decision on a motion for a directed verdict." *Conlin v Upton*, 313 Mich App 243, 254; 881 NW2d 511 (2015).  "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law."  *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 345; 871 NW2d 136 (2015).

We conclude that defendant waived any claim that the action did not sound in negligence. Early in the case, the trial court issued an order providing that "once a formal JFPO [Joint Final Pretrial Order] is filed, it supersedes previous pleadings and orders and controls the trial proceedings." It further provided that the "JFPO shall contain . . . 'a concise statement of Defendant's defenses and cross-claims . . . including legal theories.' " A JFPO was presented to the court by the parties and it was entered as an order. Under the heading "Defendant's Claims," defendant listed multiple defenses, but included no reference to premises liability or a defense that plaintiff's injury was caused by an open and obvious condition. Given the court's pre-trial orders and the JFPO to which defense counsel stipulated, defendant waived this argument.

The trial court also properly ruled that even if it were to consider the merits of the directed verdict motion, it would fail as plaintiff's claims arose out of the conduct of defendant's employee who attempted to manipulate the chairs on the shelf and caused them to fall onto plaintiff. Plaintiff alleged that defendant's employee was negligent in "reaching over Plaintiff as she bent to look at merchandise on a lower rack," "failing to warn Plaintiff that Defendant's employee would be reaching for merchandise on the top rack," "failing to properly remove the merchandise from the top rack, thereby causing merchandise to fall," and "failing to warn Plaintiff that merchandise was falling before Plaintiff was struck by said merchandise." Plaintiff similarly testified at trial regarding the employee's conduct in reaching over her, and plaintiff's attorney argued in closing that defendant's employee "negligently or carelessly . . . shuffled through some chairs." Although there was also testimony regarding the height of the shelves and whether the chairs were stacked according to the corporate planner, there was no allegation or evidence that the chairs would have fallen absent the employee's conduct in searching through them. The employee did not create a dangerous condition on the land because the chairs alone did not pose a danger. As plaintiff contends, the chairs became a danger when the employee began shuffling through them. Even defendant's attorney argued in his motion for a directed verdict that this case involved "a claim that the store employee somehow manipulated or somehow touched a chair in an unreasonably high position causing it to fall on [plaintiff's] head." Thus, although there was some evidence and argument at trial related to the condition of the shelves, the focus of plaintiff's claims was that the employee was negligent in shuffling through the chairs causing them to fall on plaintiff. The trial court did not err by ruling that plaintiff's claim sounded in ordinary negligence.

Defendant also contends that plaintiff failed to prove her claim of ordinary negligence. This issue was not, however, raised in defendant's statement of the question involved on appeal, which focuses on the open and obvious doctrine. Therefore, it is not properly presented for this Court's review. *Henderson v Dep't of Treasury*, 307 Mich App 1, 30; 858 NW2d 733 (2014). Moreover, this claim was not raised in defendant's motion for a directed verdict or motion for JNOV.[3] "[A]ny challenge to the sufficiency of the evidence in a civil case is waived by a party's failure to raise the issue in a timely motion at trial." *Shaw v Ecorse*, 283 Mich App 1, 22; 770

---

[3] Defendant did not raise the issue until it filed its reply to plaintiff's response to the motion for JNOV.

NW2d 31 (2009). In any event, there was ample testimony from which the jury could conclude that the manager did not exercise reasonable care.

### III. EXCESSIVENESS OF JURY'S VERDICT

Defendant contends that the jury's verdict was excessive and not supported by the record and requests either a new trial as to damages or an order of remittitur.[4] We "review[] a trial court's decision regarding a motion for remittitur or a new trial for an abuse of discretion." *Heaton v Benton Constr Co*, 286 Mich App 528, 538; 780 NW2d 618 (2009). "An abuse of discretion occurs when a court chooses an outcome that is outside the range of principled outcomes." *Id*.

MCR 2.611(A) provides, in relevant part:

> (1) A new trial may be granted to all or some of the parties, on all or some of the issues, whenever their substantial rights are materially affected, for any of the following reasons:
>
> * * *
>
> (c) Excessive or inadequate damages appearing to have been influenced by passion or prejudice.
>
> (d) A verdict clearly or grossly inadequate or excessive.

Under MCR 2.611(A)(1)(c)-(d), a new trial or remittitur may be granted "[w]hen a jury awards damages that appear excessive because of the influence of passion or prejudice." *Heaton*, 286 Mich App at 538. Alternatively, when the award is "clearly or grossly excessive" the influence of passion or prejudice need not necessarily be shown. In either case, "if the only error in the trial is the inadequacy or excessiveness of the verdict" the court may order remittitur. This is provided for in MCR 2.611(E)(1), which provides that in such a case "a trial court may offer the prevailing party an opportunity to consent to judgment in the highest amount the court finds is supported by the evidence." *Heaton*, 286 Mich App at 538. If the prevailing party declines to do so despite a finding of clear excessiveness, the court must then order a new trial.

We begin by noting that relief based on the inadequacy or excessiveness of damages is rarely granted and

> [a]nalysis of this issue must start with the principle that the adequacy of the amount of the damages is generally a matter for the jury to decide. Moreover,

---

[4] Defendant appears to suggest that it also seeks a judgment notwithstanding the verdict on the grounds of excessive damages. The proper vehicle by which to claim excessive damages were awarded is a motion for new trial as to damages or remittitur. Regardless of how the motion is characterized, however, our ruling would remain the same.

a verdict should not be set aside merely because the method the jury used to compute damages cannot be determined. This Court must view the evidence in the light most favorable to the nonmoving party. [*Heaton*, 286 Mich App at 538-539 (citations omitted).]

In *Gilbert v DaimlerChrysler Corp*, 470 Mich 749; 685 NW2d 391 (2004), our Supreme Court stated:

"Excessive" is defined as "going beyond the usual, necessary, or proper limit or degree; characterized by excess." In the context of compensatory damages, the determination whether damages exceed the "necessary or proper limit" is no simple task. "[T]he authority to measure damages," . . . "inheres in the jury's role as trier of fact. Because the amount required to compensate a party for pain and suffering is imprecise, that calculation typically belongs to the jury.

. . . . A reviewing court is therefore faced with the task of ensuring that a verdict is not "excessive" without concomitantly usurping the jury's authority to determine the amount necessary to compensate an injured party. Given the impossibility of using a simple algorithm for this task, judicial review of compensatory awards must rely on the fundamental principle behind compensatory damages—that of recompensing the injured party for losses proven in the record. [*Id*. at 763-764 (citations omitted).]

With these principles in mind, we turn to the jury's decision. The jury was instructed to consider six types of damages and it determined the amounts for each: (1) past economic damages for medical expenses ($25,000), (2) future economic damages for medical expenses ($2,068,000), (3) past economic damages for lost earning capacity or wages ($250,000), (4) future economic damages for lost earning capacity or wages ($806,000), (5) past noneconomic damages for pain and suffering ($250,000), and (6) future noneconomic damages for pain and suffering ($1,217,000). Defendant does not challenge the awards for past economic damages for lost earnings or past noneconomic damages for pain and suffering. For the reasons set forth below, we conclude that as to the remaining four categories, the verdict was not excessive as to three of them. However, we conclude that the damages as to future medical expenses were excessive.

## A. PAST ECONOMIC DAMAGES FOR MEDICAL EXPENSES

The jury awarded plaintiff $25,000 in past economic damages for medical expenses. Defendant argues that Plaintiff's Exhibits 16-18 supported no more than $22,508 in past medical expenses.

Initially, defendant argues here and with regard to other portions of the verdict that it is excessive because the jury exceeded the amount that plaintiff's attorney requested in closing. Defendant, however, fails to cite any caselaw supporting its suggestion that the jury is bound by

the amount sought by the plaintiff at trial nor that this alone can justify a new trial or remittitur.[5] We have previously noted that "[a] jury may award greater damages than those sought; nevertheless, that is one factor to consider in determining whether an award is excessive." *Tomei v Bloom Assoc, Inc*, 75 Mich App 661, 668-669; 255 NW2d 727 (1977). Accordingly, the amount sought by plaintiff in closing may be considered in determining whether the award is excessive, but the primary focus should be on the evidence.[6]

The evidence at trial as to past medical expenses were limited to documents showing the amount of plaintiff's health insurer's lien and plaintiff's out-of-pocket costs for health services to the date of trial. Defendant argues that the total of past medical expenses as shown by the evidence was $22,508 and we agree. As there was *no* evidence of additional expenditures we find that the award was excessive. On remand, the trial court shall grant remittitur as to the award for past medical damages so as to lower the award for past medical expenses to $22,508.

## B. FUTURE ECONOMIC DAMAGES FOR LOST EARNING CAPACITY OR WAGES

The jury awarded plaintiff a total of $806,000 for future lost earning capacity or wages. Defendant argues that plaintiff's average salary the previous five years was only $72,000 a year. However, where future damages were concerned, plaintiff's losses in pension benefits had to be included as well, which substantially increased the total. Defendant also argues that plaintiff should not have been awarded wages through age 65 claiming that she testified that she would definitely have retired at 62 or 63. In fact, plaintiff testified that she had thought she would work till age 62 or 63, but that she "didn't know" exactly when she would actually have retired. Further, plaintiff's economic expert, Dr. Paranjpe, testified that the age of retirement has been increasing and will likely continue to increase as more people work until 70. He provided the jury with charted earning loss estimates out to age 65, but explained to the jury how they could cut the loss off at age 63 or any other age they thought appropriate. He also testified that the life expectancy for plaintiff was 82 years. It was not unreasonable for the jury to conclude that plaintiff would likely have worked until 65 in light of all the testimony.

Defendant also points out that the jury calculated plaintiff's earning losses to be greater—on a year-by-year basis until her retirement—than the sums calculated by Dr. Paranjpe. However, Dr. Paranjpe also testified as to significant reduction in her pension which would carry forward through the rest of her life. He estimated that plaintiff would have lost a total of

---

[5] The cases cited by defendant in the "Introduction" section of its brief on appeal do not support its claim. In *Denhof v Grand Rapids*, 494 F3d 534, 547 (CA 6, 2007), the court concluded that, "[p]resumably, the plaintiffs' attorneys requested the amount of damages they believed were supported by the evidence," but also concluded that the award exceeded the amount supported by the evidence. The court upheld a remittitur but the amount of damages ordered by the court exceeded what had been suggested by the plaintiff's counsel. *Id*.

[6] We also note that while the evidence must provide support for the amount ultimately awarded, an attorney may, for strategic reasons, choose to suggest a figure below that in closing argument.

$900,664 for lost earnings and lost pension benefits.[7] The jury awarded a total of $806,000 which is less than the amount of loss that he calculated. Given that the figure was well below the most the evidence would have supported, we conclude that the total award was reasonable despite defendant's concern about the way in which the jury structured the calculation of that sum.[8]

## C. FUTURE NONECONOMIC DAMAGES FOR PAIN AND SUFFERING

Finally, the jury awarded plaintiff a total of $1,217,000 ($17,000 for the remainder of 2015 plus $50,000 a year for 24 years) for future noneconomic damages for pain and suffering. Defendant argues that plaintiff only sought $25,000 a year for 24 years ($600,000 in total), her injuries were not supported by the record, and the jury did not account for her preexisting injuries. With regard to plaintiff's injuries, again, the evidence must be viewed in the light most favorable to plaintiff. *Heaton*, 286 Mich App at 539. Plaintiff testified regarding her ongoing neck pain, headaches, cognition problems, and memory problems. There was testimony that as a result plaintiff could no longer work. She continued to have trouble with concentration and could not multi-task. She could also no longer do many of the activities she used to enjoy with her family or alone.

In sum, there was substantial evidence that plaintiff was suffering the cognitive, memory and mood[9] sequela of a traumatic brain injury. Where damages for emotional distress are at issue, comparison with damage awards in comparable cases "in this jurisdiction and beyond" becomes most relevant. *Gilbert*, 470 Mich at 767. "[O]ther damage awards may provide a range of what constitutes reasonable compensation for the type of injury suffered by a plaintiff." *Id*. Thus, it is necessary to consider the third factor, awards in similar cases, to determine whether the jury's award of noneconomic damages was supported by the record. For the reasons discussed below, the award of $1,217,000 over plaintiff's lifetime with consideration of inflation was reasonable.

Given that "other damage awards may provide a range of what constitutes reasonable compensation for the type of injury suffered by a plaintiff," *Gilbert*, 470 Mich at 767, the focus in comparing other cases must be on comparable injuries. Thus, it is necessary to consider cases in which the plaintiff suffered a traumatic brain injury with symptoms similar to plaintiff's symptoms, including headaches, neck pain, loss of cognitive function, memory problems, inability to concentrate, depression, and sensitivity to light and sound. Defendant, however,

---

[7] The defense did not offer any testimony that calculated a different earnings loss assuming liability.

[8] "[A] verdict should not be set aside merely because the method the jury used to compute damages cannot be determined." *Heaton v Benton Constr Co*, 286 Mich App 528, 539; 780 NW2d 618 (2009).

[9] Contrary to defendant's assertion, there was evidence that her preexisting depression was exacerbated or aggravated.

relies on cases with similar facts, i.e., objects falling at stores, but not similar injuries. None of the cases cited by defendant involved a traumatic brain injury with similar symptoms.

A survey of cases involving similar injuries reveals that the jury's total award of $4,616,000, including its award of $1,217,000 in future noneconomic damages, was reasonable. See *Popolizio v Co of Schenectady*, 62 AD3d 1181; 879 NYS2d 616 (2009) (increasing an award of $1.25 million for future pain and suffering to $1.75 million where the plaintiff suffered a traumatic brain injury that affected his everyday life, affected his cognitive functioning and ability to enjoy things, and resulted in depression); *Donnellan v First Student, Inc*, 383 Ill App 3d 1040; 322 Ill Dec 448; 891 NE2d 463 (2008) (upholding an award of $6 million for a plaintiff who suffered a brain injury, lost mobility, increased pain, and depression); *Roness v Fed Express Corp*, 284 AD2d 208; 726 NYS2d 645 (2001) (upholding award of $1 million for past pain and suffering to a plaintiff who suffered a traumatic brain injury that caused "post-accident brain-function deficits").

In sum, because the jury's verdict as to the relevant categories was not excessive the trial court did not abuse its discretion by refusing to grant a new trial under MCR 2.611(A)(1)(c).

IV. WHETHER THE VERDICT WAS THE RESULT OF PASSION AND SYMPATHY

Because we have found no excessiveness as to these categories of damages, we need not consider whether the awards "appear to have been influenced by passion or prejudice." We note, however, that after reviewing the evidence we find very little, if any, support for this claim. Defendant claims that: (1) several jurors became emotional during the testimony of plaintiff and her mother, (2) plaintiff's attorney's closing argument asked the jury to punish defendant, (3) the jury only deliberated for 30 minutes and was asked by the trial court to clarify its verdict, and (4) the jury "celebrated" in the hallway with plaintiff after the conclusion of the trial.[10]

Defendant fails to identify *any* caselaw supporting its argument that a jury's short deliberation or its claim of the jury "celebrating" with plaintiff outside the courtroom after the trial was concluded, establishes that its verdict was the product of passion or sympathy.[11] Defendant does refer us to a Florida remittitur case in which the "highly emotional testimony" of a witness caused the witness, the judge, and other court personnel to cry. *Glabman v De La Cruz*, 954 So 2d 60, 62 (Fla App, 2007). However, defendant fails to point to anything in

---

[10] No contemporaneous record of jurors "celebrating" with plaintiff in the hallway was made. The assertion is based on the affidavit of defense counsel filed with the motion for new trial.

[11] Defendant refers us to a single out-of-state case, *Blossman Gas, Inc v Shelter Mut Gen Ins Co*, 920 So 2d 422, 425 (Miss, 2006), in which a new trial was granted and in which some members of the jury hugged the defendant and her counsel after the verdict. In that case, however, ruling was based on the fact that the verdict was against the overwhelming weight of the evidence not on the jurors' action. In addition, the trial court had, unlike in this case, granted defendant's request for a new trial and the appellate court noted that it could reverse that action only by finding an abuse of discretion.

plaintiff's or her mother's testimony that was highly emotional. Nor is there any evidence that the witnesses, the judge, or court personnel cried.[12] It was well within the trial court's discretion to find that the fact that the jury was visibly moved or were happy that plaintiff obtained a verdict was insufficient to establish that its verdict was the product of passion or sympathy, particularly where the concern was not immediately brought to the court's attention. Finally, the fact that some of the jury's awards were less than what plaintiff requested further suggests that the jury was not affected by sympathy or prejudice.

With regard to defendant's claim that plaintiff's counsel made improper arguments in closing, this argument was not raised below and is, therefore, unpreserved. *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014). Had defendant raised a timely objection, the trial court could have, if necessary, provided a curative instruction. As plaintiff contends, the trial court's decision is reviewed for an abuse of discretion, *Heaton*, 286 Mich App at 538; thus, any new argument should not be considered. Nonetheless, we note that the cases cited by defendant are clearly distinguishable. In *Gilbert*, 470 Mich at 754, the Court found that the plaintiff's attorney's arguments were intended to incite passion and prejudice where counsel "evoked images of physical abuse and torture, compared his client to survivors of the holocaust, and argued that defendant . . . thought of itself as 'God Almighty' exempt from the legal norms that govern others." He also suggested that the jury should award damages not based on what would fairly compensate the plaintiff, but based on what it would take to "assure that [this] verdict will be heard from the floor of that plant on Jefferson to the board room in Auburn Hills or Stuttgart." *Id.* at 772.[13]

Nothing comparable to such language appeared in plaintiff's closing argument here. Defendant cites a single statement during closing argument by plaintiff's counsel in which he argued, "So don't let them get away with everything they've done to her. Don't let them get away with they're [sic] lies, don't let them call her a liar." Defendant argues that this language inflamed the jury to award punitive damages. However, there was no request for punitive damages, no reference to a need to punish or deter defendant from future bad conduct, and at no time did plaintiff's counsel ask the jury to "send a message" to defendant. The request to "not let them get away with this" was a request that the jury find liability based on defendant's

---

[12] Defendant cites two other out-of-state cases neither of which is on point. In S*amuels v Torres*, 29 So 3d 1193, 1196-1197 (Fla App, 2010), a new trial was granted because defense counsel made repeated references to the fact that defendant was impoverished and had no insurance to pay a judgment which the court concluded deprived defendant of fair trial. In *Carey v Lovett*, 132 NJ 44, 63; 622 A2d 1279 (1993), a new trial was granted due to repeated episodes of bias by the trial judge.

[13] Similarly, in *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 111; 330 NW2d 638 (1982), the Court concluded that the plaintiff's attorney's comments created in the minds of the jurors the image of the defendant "as an unfeeling, powerful corporation controlled by a ruthless millionaire."

negligence. And given that the defense to the case centered largely on medical testimony that plaintiff was not injured despite her assertion that she was, it was not improper for counsel to argue that they should reject the implicit suggestion that plaintiff was a liar. In closing argument attorneys "are not required to phrase arguments in the blandest of all possible terms." *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996). Finally, as already noted, that some of the jury's awards were less than what plaintiff requested also suggests that the jury was not affected by sympathy or prejudice.

Therefore, the court properly found that the verdict was not the result of passion or prejudice.

## V. FUTURE ECONOMIC DAMAGES FOR MEDICAL EXPENSES

The jury awarded plaintiff a total of $2,068,000 ($28,000 for the remainder of 2015 plus $85,000 a year for the following 24 years) in future economic damages for medical expenses. We agree with defendant that this award is clearly excessive as it bears little, if any, relationship to the expected future treatment described in testimony. Defendant argues that Dr. Bradley Sewick's testimony supported, at most, $372,000 in future medical expenses, and points out that plaintiff's counsel only suggested an award of $250,000.

In her response to defendant's motion for new trial, plaintiff argued that the jury's award was supported by past medical expenses totaling $47,000 which could be extrapolated into the future and that this sum may be lower than it should be because plaintiff had to forgo some treatment because she lost her insurance. Plaintiff also pointed to Dr. Sewick's testimony regarding her future treatment, where he stated that plaintiff would require psychological and psychiatric treatment for the "long-term," and that she should participate in a 6-months long day treatment program.[14] Sewick also noted that treatment would continue to be required for plaintiff's non-cognitive injuries such as headaches and neck pain.[15]

There was evidence that plaintiff had to forgo some recommended treatment because of her lack of insurance and so the amount billed did not necessarily reflect the full amount that should be considered, and that without insurance, the amount plaintiff would be required to pay could be higher than the discounted rates charged to most insurers. The jury was also instructed that it could consider the effect of inflation. Thus, the jury could have reasonably inferred that

---

[14] He testified that the counseling would cost up to $250 an hour, which would occur weekly or every other week. The psychiatric follow-up would occur at least on a quarterly basis and would cost approximately $250 a session. With regard to the day program, Dr. Sewick recommended a trial for three to six months, five days a week, which would cost $5,000 or $6,000 a month. He did not testify as to the cost of other treatment but such evidence was available in the plaintiff's medical bills to date.

[15] Although defendant contends that Dr. Sewick's testimony was speculative, as defendant concedes, we must view this evidence in the light most favorable to plaintiff. *Heaton*, 286 Mich App at 539.

the cost of the same services in the future would be more than the cost to date. And there was sufficient evidence that many of the sequela from her injury would continue indefinitely and that she had been referred for future treatment.

However, none of this provides evidentiary support for the jury's conclusion that plaintiff's future medical care would cost $85,000 per year. We conclude that the amount is clearly excessive and that remittitur is required.

When providing its opinion from the bench, the trial court spent little time discussing what evidence supported the jury's award for plaintiff's future medical costs. On remand, the trial court shall review the relevant evidence and determine the highest amount for future medical damages that the evidence will support. It shall also grant remittitur as to past medical damages setting the award at $22,508. Pursuant to MCR 2.611(E)(1), plaintiff will have 14 days from the trial court's order of remittitur to accept these figures and have them incorporated into the judgment. If plaintiff elects not to do so, the court shall conduct a new trial limited to the issue of damages for future medical expenses and/or past medical expenses.

We affirm the judgment in all other respects. No costs as neither party have prevailed in full. MCR 7.219. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

-11-