*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RAPHEAL NIKKIA TRAMLEE,

        Defendant-Appellant.

UNPUBLISHED
January 18, 2024

No. 361983
Ingham Circuit Court
LC No. 19-000711-FC

Before: BOONSTRA, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Defendant sexually assaulted and robbed the victim while the victim was walking to work. A jury convicted defendant of three counts of first-degree criminal sexual conduct and one count of armed robbery, and the trial court sentenced defendant to consecutive sentences of 25 to 100 years in prison for each conviction. We affirm defendant's convictions, vacate the consecutive aspect of his sentences, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

The victim was walking to work when she was approached from behind by defendant who placed her in a chokehold, forced her behind some bushes, took her property, and sexually assaulted her. Defendant then walked the victim to her work and a security camera captured video footage of defendant leaving the victim at her place of employment. The police were called, and the victim told the police that defendant had threatened to return to her place of employment and give her identification to her at a later date. The victim was then taken to a hospital where a sexual-assault examination was performed. Defendant's pubic hair was removed from her teeth and DNA evidence was collected from the victim's body and clothes.

At trial, the prosecutor made the following remarks during opening statements:

> [T]he day the defendant[] laid in wait for [the] victim . . . as she walked to work; the day that he jumped out, followed her, put her in a chokehold, put a sharp object into her left side, forced her into the bushes, stole her money, stole her knife,

-1-

and raped her by oral, by vaginal, and anal penetration. That's the day that [the victim] will always remember, and she'll never be the same.

* * *

So this man, who robs her and rapes her, forces her to walk with him to her place of business and then threatens her to not say anything, but thankfully she was stronger than that, and the moment that she was able to be released from his possession she goes inside the building and she calls 911.

And from there she's had to live with this since then. She had to endure telling multiple people about what happened to her, such a traumatic experience for her.

She has to call 911. She has to talk to the officers that arrive. She has to explain to them what happened. She's already told her coworker. She has to talk to the [emergency medical technician] that arrives. She has to tell people that there's a pubic hair stuck to her tooth that she's carried all that way with her. She has to go to the hospital. She has to talk to the staff there. She has to endure a gynecological exam after having just been raped, have somebody else, another stranger, put medical instruments inside of her.

Then the case is charged. And then what does she have to do? She has to live through the case pending through court. She has to live through this case enduring COVID. This case has been pending for two years. She's had to testify in the district court and talk to the judge there. And then today you'll hear from her and she'll have to testify in front of you, 14 strangers, as well as the defendant himself, and she'll explain to you how hard this has been on her, how hard it's been on her mental wellbeing, how hard it's been on her family life, and all because the defendant decided he wanted something from her that morning and he didn't care.

The victim subsequently testified that the assault and the events afterwards, including her treatment at the hospital, were traumatic, and she believed that she "wasn't getting anything back [from defendant] as far as [her identification] or [her] debit cart." In response, the prosecutor asked the victim whether she remembered telling the police that defendant had told her that he would return her identification to her at a later date. Defendant objected to the prosecutor's question on the grounds that it was leading the witness. The trial court overruled defendant's objection and the victim answered.

Two registered nurses conducted examinations of the victim when she was admitted to the hospital. The first registered nurse that examined the victim testified that she was a sexual-assault nurse examiner as well as a forensic nurse examiner, and she described her examination of the victim, which included a full physical examination, gynecological examination, the taking of a statement from the victim about the assault, and the collection of forensic evidence. She testified further that the victim's injuries were consistent with her report of assault. The second registered nurse testified that she was also a forensic nurse examiner, and that she collected evidence from

the victim to conduct a DNA analysis, which later showed a match to defendant's DNA. The trial court qualified both registered nurses as experts, and defendant did not object to their qualification.

Additionally, two forensic scientists with the Michigan State Police testified about their procedure in analyzing the DNA evidence that was collected from the victim. One of the scientists testified that the analysis showed "strong support" that defendant was a contributor to the DNA material found in the victim's underwear. Both scientists were qualified as experts in forensic science without objection by defendant.

Before defendant testified, the prosecutor moved to amend defendant's charges to include an alternate basis for conviction regarding additional crimes that defendant had planned to admit to during his testimony. The trial court denied the prosecutor's motion to amend because the facts underlying the prosecutor's request had not been admitted as evidence, and the trial court was concerned that the proposed amended charge could potentially interfere with defendant's right to testify.

The defendant then testified that he approached the victim to ask for a cigarette before the victim asked defendant whether he wanted to "smoke crack cocaine with her." Defendant asserted that the victim wanted to get more drugs, and the victim gave her property to him, before having sex with him, to compensate him for the drugs that he was going to acquire. He stated that he did not want to admit to the sexual conduct with the victim because he did not want his wife to know that he had "cheated on her."

The prosecutor cross-examined defendant and asked him whether he was referring to his wife that was "in the courtroom" and was "sitting next to [his] girlfriend?" Defense counsel objected to the question, and the prosecutor argued that the question was meant to impeach defendant's credibility, because it was reasonable that defendant would not be concerned about his wife discovering his infidelity with the victim if his wife was unconcerned about his infidelity with his girlfriend. The trial court overruled defendant's objection, and defendant answered the prosecutor's questions.

The jury found defendant guilty as described above. During sentencing the trial court found that the nature of defendant's criminal offenses had escalated, he did not demonstrate any rehabilitation after his prior offenses, and he was a danger to society because it was likely that he would re-offend. The trial court then sentenced defendant as follows:

> So, sir, you are going to receive a consecutive sentence on each count—I'm sorry—yes, a consecutive sentence on each count, not concurrent. . . .

> And then you will serve 300 months to 1200 months, consecutive to Count 2, 300 months to 1200 months, consecutive to Count 3, 300 months to 1200 months, consecutive to Count 7, 300 to 1200 months. That is 25 to 100 years on each count.

The trial court denied defendant's motion for resentencing, and defendant now appeals his convictions as well as his sentencing.

## II. ANALYSIS

## A. ALLEGED PROSECUTORIAL ERROR

Defendant first argues that the prosecutor committed several errors in making her opening statement, questioning witnesses, moving to amend the charges, and providing witnesses as experts. As defendant concedes, however, there were no objections raised at trial on the basis of these alleged errors. "In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Consequently, these issues are not preserved for appeal. See *People v Brown*, 239 Mich App 735, 748; 610 NW2d 234 (2000).

This Court reviews unpreserved errors for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Plain error exists when 1) an error occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Beck*, 510 Mich 1, 27; 987 NW2d 1 (2022) (cleaned up). "Even after these prongs are met, reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (cleaned up).

Defendant argues that the prosecutor's opening statement improperly sought to appeal to the passions of the jury because the prosecutor defined defendant's conduct as a day that the victim would always remember, and described the actions that the victim took after the assault as being hard on her.

This Court "must consider the prosecutor's remarks in context" on "a case-by-case basis," *Bennett*, 290 Mich App at 475, and this Court has held that "prosecutors may use hard language when it is supported by evidence and are not required to phrase arguments in the blandest of all possible terms," *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996) (cleaned up). In this case, the prosecutor's remarks were supported by evidence that was admitted at trial. This included the victim's own testimony in which she recounted the trauma that she endured. Thus, no error occurred.

Next, defendant argues that the prosecutor improperly led the victim's testimony when the victim was asked whether she remembered telling the police that defendant had threatened to return with her identification at a later date. Even assuming, without deciding, that it was error to ask this question, there was a significant amount of evidence supporting defendant's convictions that included defendant's DNA being present on the victim's underwear. Further, whether defendant threatened to return the victim's identification at a later date was not a dispositive fact that affected the outcome of the trial because his charges concerned his conduct before that threat. Thus, it was not plain error for the prosecutor to ask this question.

Defendant argues that it was error for the prosecutor to introduce the two registered nurses and two forensic scientists as experts because each witness testified about their lay-observations and not about any technical procedure. Defendant concedes that defense counsel affirmatively stated that there was no objection to the qualification of the witnesses as experts. Defendant ignores, moreover, that the specifics of each witnesses' testimonies concerned the technical collection of evidence as well as scientific analysis. Specifically, the registered nurses offered

testimony about whether the victim's injuries were consistent with her account of assault, and the forensics scientists offered their opinions about whether the forensic evidence connected defendant to the crime. These are not mere descriptions of occurrences, but instead depictions of specialized scientific procedures that an expert could help explain to the jury. Further, under MRE 702, a court may admit expert testimony if it determines that scientific, technical, or other specialized knowledge would help the trier of fact better understand matters pertaining to that knowledge, if the proposed expert is qualified on the basis of knowledge, skill, experience, training, or education. *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). Given that the witnesses' testimonies were scientific and technical, there was no error in the introduction, and qualification, of these witnesses as experts.

Defendant also argues that it was error for the prosecutor to move for an amendment of his charges in anticipation of his testimony because that motion had a chilling effect on his constitutional right to testify. Defendant ignores, however, that the trial court denied the prosecutor's motion to amend defendant's charges and defendant did, in fact, testify. Moreover, this Court has held that first-degree criminal sexual conduct includes sexual penetration under circumstances involving any other felony. See *People v Waltonen*, 272 Mich App 678; 728 NW2d 881 (2006). Thus, there was no error in the prosecutor seeking to amend the charges for this reason.

Defendant next argues that the prosecutor committed an error when defendant was cross-examined about his relationship to his wife and his girlfriend in the courtroom. Defendant ignores, however, that his testimony provided a basis for his defense that he was not initially forthright with the sexual conduct he had with the victim because he was worried that his wife would find out about his infidelity. Given that the cross-examination was relevant to the issue of defendant's credibility, the prosecutor had a good-faith basis for asking defendant about his relationships. Accordingly, there was no error on this issue.

## B. ERRORS IN SENTENCING

Lastly, defendant appeals his consecutive sentences. During oral argument in this Court, the prosecutor agreed that this issue could be remanded to the trial court for further clarification regarding the consecutive nature of defendant's sentences. "[W]hen a statute grants a trial court discretion to impose a consecutive sentence, the trial court's decision to do so is reviewed for an abuse of discretion, i.e., whether the trial court's decision was outside the range of reasonable and principled outcomes." *People v Norfleet*, 317 Mich App 649, 654; 897 NW2d 195 (2016). "Accordingly, trial courts imposing one or more discretionary consecutive sentences are required to articulate on the record the reasons for each consecutive sentence imposed." *Id*.

In this case, the trial court generally found that defendant's escalating criminal behavior, as well as his lack of rehabilitation and likelihood of recidivism, required consecutive sentences. This was in error, however, as this Court has explained that "a trial court may not impose multiple consecutive sentences as a single act of discretion nor explain them as such. The decision regarding each consecutive sentence is its own discretionary act and must be separately justified on the record." *Id*. at 665.

## III. CONCLUSION

The prosecutor presented overwhelming evidence that defendant committed the crimes as described by the victim in her testimony, and the alleged errors either did not occur or did not seriously affect the fairness, integrity, or public reputation of the judicial proceedings. *Beck*, 510 Mich at 27. The trial court erred, however, when it sentenced defendant consecutively without properly articulating the reason for each consecutive sentence. *Norfleet*, 317 Mich App at 654.

Defendant's convictions are affirmed, the consecutive aspects of his sentences are vacated, and the matter of defendant's sentencing is remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle