*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
February 7, 2019

Plaintiff-Appellee,

v

No. 341266
Gratiot Circuit Court
LC No. 2017-007623-FH

SHARYL KAY WATKINS,

Defendant-Appellant.

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

A jury convicted defendant, Sharyl Watkins, of second-degree arson, MCL 750.73(1), arson of insured personal property, MCL 750.76(1)(c), and intent to commit arson, MCL 750.79(1)(d)(*vi*). The trial court sentenced her to serve 30 to 240 months in prison for the second-degree arson conviction, and 30 to 120 months each for the arson of insured personal property and intent to commit arson convictions. Defendant appeals her convictions as of right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises out of a fire that occurred at defendant's residence on November 1, 2016. Defendant had purchased the residence from a friend by means of a land contract. Upon paying off the contract, defendant discovered that she owed back property taxes of approximately $2,600. In addition to owing delinquent taxes, defendant was behind on her medical bills and owed $8,000 for a repossessed vehicle. She had been unable to obtain homeowners insurance on the residence because she had a wood stove in the basement; however, in September 2016, she was able to purchase an insurance policy from Farm Bureau Insurance that covered the personal property inside of the house, up to a maximum of $15,000. The policy covered fire and explosion losses.

On the morning of the fire, defendant left her home to visit her mother and run errands before her work shift at Mission Urgent Care began that afternoon. She returned home twice. Soon after leaving the second time, defendant's sister called her and informed her that her house was burning. Defendant telephoned Mission Urgent Care and told one of her co-workers that she

could not report to work because her house was on fire. After hearing about the fire, the office manager at Mission Urgent Care checked defendant's computer browser history and found that defendant had accessed two webpages, one from graywolfsurvival.com entitled, "Ten Ways How to Start a Fire Without a Lighter," and a second from wikihow.com entitled, "Six ways [sic] to Make Fire Without Matches or a Lighter."[1] Defendant accessed both webpages around 5:30 p.m. on October 31, 2016, the day before the fire. The office manager notified the police and turned over the web browser history to Detective Michael Morris of the Gratiot County Sheriff's Office.

Detective Morris interviewed defendant during the course of his investigation. He testified that defendant indicated that she wanted to adopt a baby but her home did not meet the licensing requirements. When he asked defendant about the fire, she replied, "I left the heater plugged in, on purpose, only because it was cold, for one, but, for two, there was a cardboard box right next to it." The cardboard box was positioned so that the space heater in defendant's bedroom was blowing directly on it. Defendant said she did not know that the space heater would get hot enough to ignite the cardboard, but agreed when Detective Morris asked if the reason "why you did that was that if it [the house] burned down you wanted to be able to get your [insurance] money and have a home for that baby, isn't it?" She said she was shocked when she arrived at the scene of the fire because she "didn't think it was really gonna take off." Asked by Detective Morris if she "knew it could have taken off[,]" defendant responded, "Right, I didn't move it to prevent it, I guess, does that make sense? And I didn't move it to make it happen either, but if it happened then whatever. That's the way I felt." Asked if she "knew it could happen[,]" defendant replied, "Right, that was a possibility."

Defendant filed a claim with Farm Bureau on the same day as the fire. Jason Daugherty, a special investigator in Farm Bureau's special investigation unit, hired Michael Jenkinson, a fire investigator with Elite Investigation Group, to investigate the origin and cause of the fire. Jenkinson concluded that the fire originated in the location where the bedroom space heater had been. Detective Sergeant Trever Slater, a specialist and fire investigator with the Michigan State Police Fire Investigation Unit, also concluded that the fire originated in that location. Furthermore, both Jenkinson and Slater concluded that the fire was not electrical and did not originate with the outlet into which the space heater was plugged. Finally, both concluded that human action caused the fire, not a space heater malfunction or an electrical issue.

---

[1] At trial, Detective Morris confirmed that defendant told him she did not search the internet for the websites, but came across them while she was on YouTube. She then went to her computer to call them up and look at them. He also agreed that neither website had anything to do with space heaters, and that the "gray wolf survival" site concerned getting lost while camping without a match or lighter.

## II. ANALYSIS

### A. INSUFFICIENT EVIDENCE

Defendant first contends that there was insufficient evidence for a jury to find that she intentionally set the fire. We disagree. We review "de novo a claim that the evidence at trial was insufficient to support a conviction." *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). We resolve all factual conflicts in favor of the prosecution, and we "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).

Due process requires the prosecution to prove every element of a charged crime beyond a reasonable doubt. *People v Oros*, 502 Mich 229, 240 n 3; 917 NW2d 559 (2018), citing *Patterson v New York*, 432 US 197, 210; 97 S Ct 2319; 53 L Ed 2d 281 (1977). "Intent may be inferred from all the facts and circumstances." *People v Cameron*, 291 Mich App 599, 615; 806 NW2d 371 (2011). Due to the difficulty of proving an actor's state of mind relating to intent, minimal circumstantial evidence is sufficient. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

As indicated, a jury convicted defendant of three offenses: second-degree arson, arson of insured personal property, and intent to commit arson. In order to prove second-degree arson and arson of insured property, the prosecution had to prove that defendant "willfully or maliciously" burned, damaged, or destroyed by fire or explosive a dwelling or personal property insured against loss by fire or explosion. MCL 750.73(1): MCL 750.76(1)(c). To convict defendant of intent to commit arson, the prosecution had to show that she performed certain acts "with the intent to commit arson in any degree." MCL 750.79(1). To establish that a person acted "willfully or maliciously," a prosecutor must prove one of the following:

> 1) that the defendant intended to do the physical act constituting the actus reus of arson, i.e., starting a fire or doing an act that results in the starting of a fire (intentional arson); or 2) that the defendant intentionally committed an act that created a very high risk of burning a dwelling house, and that, while committing the act, the defendant knew of the risk and disregarded it (wanton arson). [*People v Nowack*, 462 Mich 392, 409; 614 NW2d 78 (2000); see also M Crim JI 31.4(4).]

After reviewing the record, we conclude that the prosecution presented sufficient evidence to allow a rational jury to conclude that defendant had the requisite intent to commit the charged crimes. The prosecution presented evidence that defendant had financial and personal motives for committing arson: she owed back taxes, medical bills, and $8,000 on a repossessed car, and she wanted to adopt a baby but her house did not meet the necessary requirements. The jury also heard defendant make various incriminating statements during her interview with Detective Morris. In particular, she indicated that her arrangement of the space heater and cardboard in her bedroom was risky, but she did nothing to prevent the possible outbreak of fire and her attitude was if "it happened then whatever." She would be out from under the burden of

-3-

her house, obtain some insurance money, and be in a better position to adopt a baby. The jury also heard that defendant had visited webpages on how to start fires without matches or lighters only one day prior to the fire, and heard the prosecution's experts testify that the fire originated at the space heater and was intentionally caused by human action. Viewed in the light most favorable to the prosecution, *Wolfe*, 440 Mich at 515, the foregoing evidence was sufficient to permit a jury to infer beyond a reasonable doubt that defendant "intentionally committed an act that created a very high risk of burning a dwelling house, and that, while committing the act, the defendant knew of the risk and disregarded it." *Nowack*, 462 Mich at 409. [2]

## B. PROSECUTORIAL MISCONDUCT

In addition to her main brief, defendant filed a standard 4 brief[3] in which she argues that the prosecutor committed misconduct by misstating the law to the jury and by arguing facts not in evidence. These claims are without merit. We consider prosecutorial misconduct cases "on a case-by-case basis" and review them de novo "to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Because defendant did not preserve this issue with a timely objection and request for a curative instruction, our review is for plain error that affects substantial rights. *Id*. We will reverse "only when plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 475-476 (quotation marks and citations omitted). Furthermore, we will not find error requiring reversal when "a curative instruction could have alleviated any prejudicial effect." *Id*. at 476 (quotation marks and citations omitted).

Defendant first argues that the prosecutor misrepresented the element of intent to the jury by remarking that a person acting with a completely innocent state of mind might suffer the same penalty as one who acts with malicious intent. In support of her position, defendant cites the following remarks from the prosecutor's opening statement:

> This isn't a situation—what I don't want you think [sic] is boy, there are times where I turn on a—I leave a candle burning or I leave a space heater running and I know the warnings with respect to those things but I never intended to leave them

---

[2] Defendant also argues that the evidence was insufficient to convict her of intent to commit arson, MCL 750.79(1) because the prosecution presented no evidence of "preparation to burn." This argument is without merit. "Preparation to burn" is the title used in M Crim JI 31 for the crime of intent to commit arson, MCL 750.79. It is not an element of the crime. For a jury to convict defendant of violating MCL 750.79, the prosecutor needed to show only that defendant used, arranged, placed, devised, or distributed an inflammable, combustive, or explosive substance in her home with the intent to commit arson in any degree. MCL 750.79(1).

[3] A standard 4 brief is one filed by an indigent defendant in accordance with Michigan Supreme Court Administrative Order 2004-6, Standard 4. See 471 Mich cii (2004).

on or I never thought that it was going to result in a fire. So you have that. That—that's the accidental [sic] but when you have this, knowingly leaving flammable or combustible material in close proximity to something like a candle or a running space heater with the appreciation that it could start a fire.

As further support, defendant cites the following remarks from the prosecutor's closing argument:

You can find [intent] one of two ways. The first is intending to burn the dwelling or its contents. An example would be using a match to light cardboard on fire. . . . [A]nd then you have the second, intentionally committed an act that created a very high risk of burning a dwelling or its contents and that while committing the act the defendant knew of the risk and disregarded it.

Viewing these remarks in context shows that the prosecution did not misrepresent the element of intent. See *Bennett*, 290 Mich App at 475 ("[T]he reviewing court must consider the prosecutor's remarks in context."). In her opening remark, she distinguished between accidentally setting something on fire and what she insinuated defendant did here: knowingly create a high risk of burning which she then disregarded. See *Nowack*, 462 Mich at 409. In her closing remarks, the prosecutor provided an accurate statement of the two ways to establish the requisite intent to commit second-degree arson. *Id*.; see also M Crim JI 31.4(4). Accordingly, defendant's claim of prosecutorial misconduct based on alleged misstatements of law fails.

Defendant next contends that the prosecutor argued facts not in evidence when she stated that "a nylon" could have been put into the space heater. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008). In the case at bar, the prosecutor did not suggest that defendant started the fire by placing a nylon in the space heater and waiting for it to ignite. Rather, the prosecutor merely recited the use of a nylon as a hypothetical example illustrating an intent to burn. In short, defendant has failed to point to any instances of prosecutorial misconduct.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises ineffective assistance of counsel claims in both her main brief and her standard 4 brief. Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). We review findings of fact for clear error and questions of constitutional law de novo. *Id*. Examination of counsel's actions is "highly deferential" and proceeds under a "strong presumption" that counsel's actions reflected a "sound trial strategy." *Id*. at 62, quoting *Strickland v Washington*, 466 US 668, 689; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Further, this Court will not "substitute [its] judgment for that of counsel on matters of trial strategy . . . ." *Unger*, 278 Mich App at 242-243.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 US at 694; 104 S Ct 2052; see also *People v Ullah*, 216 Mich App 669, 684-685; 550 NW2d 568 (1996). "A reasonable probability [of a different result] is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 US at 694.

In her main brief, defendant contends that her trial counsel rendered constitutionally ineffective assistance by using the word "confess" or "confession" in reference to statements she made in her interview with Detective Morris. As one example, she cites trial counsel's question to Detective Sergeant Slater, "Detective Morris calls you and tells you that [defendant] confessed, right, said that she did this act intentionally?" Defendant contends there was no sound reason for referring to her statements as a confession. Defendant's claim lacks merit.

Our review of the record convinces us that counsel's use of the word "confession," including in his question to Detective Sergeant Slater, was part of a larger strategy to discredit the characterization of defendant's statements as an arson confession. Trial counsel set up this strategy during his opening statement, and then executed it during his cross-examination of Detective Morris by attempting to show that defendant was not confessing to arson; at worst, she was admitting to being negligent when placing cardboard boxes near the space heater. Additionally, trial counsel attempted to show that Detective Morris's characterization of defendant's statement as a confession influenced the conclusions other witnesses reached, as, for example, in this exchange with Detective Sergeant Slater:

> *Q*. [DEFENSE COUNSEL] So with all of that information, initially you made the finding that it was undetermined, the cause of this fire?
>
> *A*. [SLATER] That's correct.
>
> *Q*. Detective Morris calls you and tells you that Ms. Watkin's confessed, right, said that she did this act intentionally?
>
> *A*. Correct.
>
> *Q*. And that's—and then that's when you come to your conclusion that this was an incendiary fire?
>
> *A*. That is correct.

Finally, trial counsel argued in his closing remarks that Detective Morris's communicating to "everybody" that defendant confessed "taints this whole picture."

Viewing trial counsel's statements in context shows that he did not accidentally or inadvertently use the word "confession," as defendant maintains, but he used it as part of a larger strategy to discredit and mitigate the effects of defendant's interview with Detective Morris.

-6-

That a strategy does not work does not render its use ineffective assistance of counsel. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

In her standard 4 brief, defendant contends that trial counsel was constitutionally ineffective for failing to object to the prosecution's playing her videotaped interview for the jury because it was incomplete, in violation of MCL 763.8(2).[4] It appears that the equipment used to record defendant's custodial interrogation was activated by motion. Asked at trial if the recording of the interview was complete, Detective Morris testified, "there may be a few seconds here or there that are omitted because of no movement but for the most part it's a complete report—recording, yes." Even if we assumed for the sake of argument that interruptions and omissions of a few odd seconds in the recording due to the absence of movement resulted in an incomplete recording for purposes of MCL 763.8(2), exclusion of the recorded portions of the interview is not required. See MCL 763.9 (stating that where a statement is not recorded as required under MCL 763.8 or properly preserved, the court may inform the jury of the law's requirement and the jury may consider the absence of or failure to preserve a recording in evaluating the evidence relating to the individual's statement). Accordingly, defense counsel would have had no grounds to move for the recording's suppression. The failure to advocate a meritless position does not constitute ineffective assistance of counsel. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Finally, defendant contends that her counsel rendered ineffective assistance because he did not call additional defense witnesses, even though he told the jury in his opening remarks that it would "hear from our witnesses and our expert." Whether to call witnesses is presumed to be a matter of trial strategy, *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012), and we will not second-guess counsel on matters of trial strategy, see *Unger*, 278 Mich App at 242-243. Moreover, the failure to call witnesses can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). In the present case, trial counsel called a fire investigator expert to testify on defendant's behalf and executed a strategy to minimize the negative effects of defendant's interview with Detective Morris. Defendant does not identify any other witnesses whose testimony would have aided her defense or altered the outcome of the trial. Thus, this is not a situation where counsel's decision regarding witnesses deprived defendant of a substantial defense, *id*., nor has defendant shown a reasonable probability that, but for counsel's failure to call additional witnesses, the outcome of

---

[4] MCL 763.8(2) provides:

> A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.

the trial would have been different, *Ullah*, 216 Mich App at 684-685. Accordingly, defendant has failed to establish her claim of ineffective assistance of counsel.[5]

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause

---

[5] Defendant also contends in her standard 4 brief that counsel rendered ineffective assistance when he characterized her videotaped interview with Detective Morris as a "confession" and when he failed to object when the prosecutor misstated the intent element to the jury. As discussed, however, defense counsel's use of the word "confession" was in service of his trial strategy, which we will not second-guess, *Unger*, 278 Mich App at 242-243, and the prosecutor accurately represented the element of intent with regard to arson. Therefore, these claims of ineffective assistance are without merit.