*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RANDY PAUL KIRK, JR.,

        Defendant-Appellant.

UNPUBLISHED
May 15, 2026
12:56 PM

No. 368445
Cass Circuit Court
LC No. 2022-010343-FC

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of assault with intent to commit murder (AWIM), MCL 750.83; felonious assault, MCL 750.82; two counts of resisting and obstructing a police officer, MCL 750.81d(1); possession of ammunition by a felon, MCL 750.224f(6); possession of a firearm by a felon (felon-in-possession), MCL 750.224f; and four counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant as a second-habitual offender, MCL 769.10, to 22 to 50 years' imprisonment for AWIM; 21 months to 6 years for felonious assault; 21 months to 3 years for each resisting-and-obstructing conviction; and 28 months to 90 months for the possession of ammunition and felon-in-possession offenses. The trial court further sentenced defendant to four concurrent two-year terms for felony-firearm, to be served consecutively to and preceding the remaining sentences. We affirm.

## I. FACTUAL BACKGROUND

This case arises from a series of events that occurred in Cass County, Michigan, in which defendant allegedly discharged a firearm while traveling through the Vandalia, Michigan area before being arrested in the parking lot of a Dollar General store. Justice Colpitts, a 28-year-old father, was driving his daughter to preschool when he observed a man firing a handgun in the roadway near the intersection of Brownsville Road and Calvin Center Road in Vandalia. Colpitts testified that the man stood in a two-handed shooting stance and fired toward vehicles traveling on the road. Colpitts heard approximately three to five gunshots during this initial encounter and immediately called 911 while attempting to follow the vehicle involved.

-1-

Colpitts testified that while he was following the vehicle, defendant stopped, exited the vehicle, and fired several shots toward Colpitts's truck. Colpitts described hearing bullets "whizz[ing] past" as he placed his truck in reverse to avoid the gunfire. He also heard a "thunk" strike his vehicle but was initially unsure whether a bullet had made contact. Because he was concerned for his safety, Colpitts stopped following defendant and waited for officers to arrive. Colpitts initially believed that defendant had turned down a street near a park adjacent to the Dollar General store in Vandalia. Officers later determined that defendant had entered the Dollar General parking lot instead.

Multiple law-enforcement officers responded to dispatch reports regarding defendant's actions. Detective Kevin Cook of the Cass County Sheriff's Office testified that when he arrived at the Dollar General parking lot, he observed defendant exiting his vehicle. As defendant stepped out, he removed a handgun from his waistband and raised it toward Detective Cook's patrol vehicle. Detective Cook immediately issued repeated commands for defendant to drop the weapon and get on the ground. Defendant refused to comply and responded, "F*** you, I'm not getting on the ground."

Captain Thomas Jacobs of the Cass County Sheriff's Office arrived shortly thereafter, along with Cassopolis Police Chief Todd McMichael. Captain Jacobs observed defendant pointing the firearm toward Detective Cook. Captain Jacobs exited his vehicle with his weapon drawn while Detective Cook continued giving commands. Defendant eventually lowered the handgun and placed it back into his waistband but still refused to comply with orders to get on the ground. The officers moved toward defendant in an effort to secure the weapon and take him into custody. Detective Cook struck defendant in the neck using a defensive-tactics maneuver intended to incapacitate a suspect during a dangerous confrontation. Detective Cook testified that he delivered the strike with significant force because it was necessary to immediately disable defendant. He stated that he then removed the handgun from defendant's waistband while the other officers attempted to restrain him. During the struggle, Chief McMichael deployed a taser. Sergeant Jeffrey Johnson arrived shortly thereafter and assisted in securing defendant.

After defendant's arrest, Colpitts drove to the Dollar General store and showed officers the damage to the front of his truck. He later confirmed that the sound he heard during his encounter with defendant was a bullet striking and damaging the vehicle's headlight. The officers also searched defendant's vehicle. They discovered a large can of Steel Reserve beer, a small bottle of Bacardi rum, a spent 9-millimeter shell casing, as well as a box of ammunition. Detective Cook testified that the casing, found on the rear driver-side floorboard of the vehicle, was consistent with other shell casings recovered along the route defendant had traveled earlier that morning. Detective Cook explained that it would not be unusual for a spent casing to land inside a vehicle if a handgun were fired from within the vehicle or partially outside the window.

Following a five-day jury trial, defendant was convicted and sentenced as earlier described. After sentencing, defendant filed a motion for a new trial and a motion to correct an invalid sentence. In those motions, defendant argued that the prosecutor improperly characterized the incident as an attempted mass shooting and made inflammatory arguments during trial, and that the trial court relied on those characterizations in imposing its sentence. The trial court denied both motions. The court concluded that the evidence against defendant was strong, the jury was presumed to have followed its instructions, and defendant's within-guidelines sentence was

proportionate given that he fired multiple shots and placed several individuals at risk during the incident. This appeal followed.

## II. ANALYSIS

## A. NEW TRIAL

Defendant argues that he was denied a fair trial because the prosecutor engaged in misconduct[1] by making inflammatory arguments during opening and closing statements. He specifically takes issue with references to defendant as "hunting humans," acting on a "rampage," and potentially committing a "mass shooting," and by eliciting improper lay opinion testimony from law enforcement witnesses. We disagree.

A trial court's decision denying a motion for a new trial is reviewed for an abuse of discretion. *People v Johnson*, 502 Mich 541, 564; 918 NW2d 676 (2018). A court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013).

Because defendant failed to object to the underlying instances of alleged prosecutorial misconduct and did not request any curative jury instructions, those claims are unpreserved. *People v Evans*, 335 Mich App 76, 88-89; 966 NW2d 402 (2020). We review unpreserved claims for plain error affecting defendant's substantial rights. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). To obtain relief under the plain-error standard, defendant must show that (1) an error occurred, (2) the error was plain, and (3) the error affected his substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original). Additionally, we will not find "error requiring reversal where a curative instruction could have alleviated any prejudicial effect." *People v Callon*, 256 Mich App 312, 329-330; 662 NW2d 501 (2003).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct claims are evaluated case by case by "examin[ing] the remarks in context to determine whether they denied defendant a fair trial." *People v Bahoda*, 448 Mich 261, 267; 531 NW2d 659 (1995). "Generally, '[p]rosecutors are accorded great latitude regarding their arguments and conduct.' " *Id*. at 262 (citation omitted; alteration in original). They may argue the evidence and all reasonable

---

[1] "[A]lthough the term 'prosecutorial misconduct' has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015) (quotation marks and citation omitted).

-3-

inferences arising from it as they relate to their theory of the case. *Id*. at 282. The prosecutor's remarks must be considered "in context to determine whether they denied defendant a fair trial." *Id*. at 267.

Defendant first contends that the prosecutor improperly inflamed the jury by repeatedly characterizing defendant's conduct as "hunting humans," describing the events as a "rampage," and suggesting that defendant was on the verge of committing a "mass shooting." The prosecutor made similar statements in both opening and closing arguments. However, when viewed in context, the challenged remarks were grounded in the evidence presented at trial. Testimony established that defendant fired multiple rounds at an occupied vehicle at an intersection and later fired several additional shots at Colpitts, who followed defendant toward the Dollar General store. One of the bullets struck Colpitts's truck. Further evidence showed that after this encounter, defendant continued toward the Dollar General. Defendant remained armed when officers confronted him in the Dollar General parking lot. A search of defendant's vehicle following his arrest indicated that he had upwards of fifty rounds of ammunition in his possession.

From this evidence, the prosecutor argued that defendant had already fired at multiple individuals and that police intervention prevented further violence. The prosecutor used forceful language describing defendant as "hunting humans," acting on a "rampage," or potentially carrying out a "mass shooting." Those remarks were proper and constituted rhetorical characterizations of the evidence rather than assertions of facts not supported by the record. Prosecutors are permitted to argue the evidence and all reasonable inferences arising from it, even when doing so involves the use of strong or vivid language. *Bahoda*, 448 Mich at 282; see also *People v Ullah*, 216 Mich App 669, 678; 550 NW2d 568 (1996) (explaining that a prosecutor may use hard language when it is supported by the evidence).

Moreover, the prosecutor's remarks must be considered in light of the jury instructions. The jury was instructed that the attorneys' arguments were not evidence and that its verdict must be based only on the evidence admitted at trial. Jurors are presumed to follow their instructions, and such instructions generally cure any potential prejudice arising from prosecutorial argument. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). Accordingly, defendant has not demonstrated plain error affecting his substantial rights. Given the strength of the evidence, including eyewitness testimony that defendant fired multiple shots toward Colpitts's occupied vehicle and that a bullet struck the truck, defendant cannot demonstrate that the challenged remarks affected the outcome of the proceedings.

Defendant next argues that the prosecutor improperly elicited lay opinion testimony from several law enforcement witnesses concerning matters such as the mechanics of reloading defendant's handgun and the relative accuracy of handguns versus rifles. Under MRE 701, a lay witness may provide opinion testimony if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Police officers may provide such testimony when it is based on their personal observations and experience. *People v Fomby*, 300 Mich App 46, 50-53; 831 NW2d 887 (2013).

The record indicates that the challenged testimony satisfied these requirements. For example, Detective Cook testified that defendant's handgun was fully loaded when he was arrested despite evidence that defendant had fired numerous rounds earlier. Detective Cook explained,

based on his experience with firearms, that the weapon would have required reloading. This testimony was based on Detective Cook's observations and experience. It was helpful to the jury's understanding of how the weapon could have been reloaded. Similarly, Captain Jacobs testified that damage to defendant's vehicle was consistent with bullet strikes caused by firing out of a car window. Additional testimony from retired Cass County Sheriff's Deputy Al Strukel, who helped process the scene at the intersection of Brownsville and Calvin Center Roads. Deputy Strukel indicated that handguns are generally less accurate than rifles at longer distances. These opinions were grounded in the officers' training and firsthand observations during the investigation. Because the testimony was based on the witnesses' perceptions and assisted the jury in evaluating the evidence, the trial court did not abuse its discretion by admitting it. *Fomby*, 300 Mich App at 50-53. Such testimony helped the jury understand the physical evidence and the mechanics of the firearm involved in the incident.

To the extent that defendant also challenges the form of certain questions as leading, he has not demonstrated prejudice. Defendant specifically argues that the prosecutor engaged in misconduct by asking Captain Jacobs a leading question concerning the bullet holes observed in the driver's-side rear door pillar of defendant's vehicle. During direct examination, the prosecutor essentially asked Captain Jacobs whether damage to that portion of the vehicle could occur if a person seated in the driver's seat fired a handgun out of the window toward the rear of the vehicle. Defense counsel objected that the question called for expert ballistics testimony. The trial court overruled the objection and permitted the testimony as lay opinion under MRE 701 after noting Jacobs's extensive law-enforcement experience and firearms training.

The form of the prosecutor's question, even if somewhat leading, does not establish prosecutorial misconduct. Trial courts have broad discretion to permit leading questions when necessary to develop testimony. *People v Watson*, 245 Mich App 572, 587; 629 NW2d 411 (2001). Reversal is warranted only when such questioning results in the admission of inadmissible evidence or otherwise prejudices the defendant. *Id*. Here, Jacobs's testimony was based on his personal observations of the vehicle and his extensive experience with firearms and crime scenes involving gunfire. The trial court determined that this experience provided an adequate foundation for limited lay opinion testimony regarding whether a bullet fired from inside the vehicle could have caused the observed damage. Because the testimony was properly admitted under MRE 701 and defendant has not shown that the phrasing of the prosecutor's question affected the jury's verdict, defendant has failed to demonstrate plain error affecting his substantial rights.

Defendant further contends that the prosecutor elicited lay opinion testimony that effectively expressed an opinion regarding defendant's intent to kill Colpitts. Again, a lay witness may offer opinion testimony if it is rationally based on the witness's perception and helpful to the jury. MRE 701; *Fomby*, 300 Mich App at 50-53. Generally, witnesses may not express an opinion regarding a defendant's guilt or the credibility of another witness. *People v Musser*, 494 Mich 337, 348-349; 835 NW2d 319 (2013). However, testimony is not objectionable merely "because it embraces an ultimate issue" to be decided by the trier of fact. MRE 704.

The challenged testimony does not constitute improper opinion testimony regarding defendant's intent. The officers testified about their observations during the incident and the investigation, including the number of shots fired, the manner in which defendant handled the firearm, and the circumstances surrounding the confrontation with Colpitts. Testimony describing

the mechanics of the firearm, the damage caused by the gunfire, and the officers' observations of defendant's conduct was based on the witnesses' personal perceptions and training. It was offered to assist the jury in understanding the physical evidence and sequence of events. Importantly, none of the cited testimony reflects that a witness expressly stated that defendant intended to kill Colpitts. Rather, the testimony provided factual context from which the jury could draw its own conclusions regarding defendant's intent. Thus, determining defendant's intent remained the province of the jury. Further, the jury was instructed to consider all of the surrounding facts and circumstances, including defendant's conduct before, during, and after the assault, in deciding whether defendant acted with the intent to kill. Accordingly, defendant has not demonstrated that the prosecutor elicited improper opinion testimony or that the trial court abused its discretion in admitting the challenged testimony.

Ultimately, the prosecutor's challenged remarks constituted permissible argument based on the evidence and the reasonable inferences arising from it. Additionally, the trial court did not abuse its discretion by permitting the limited lay opinion testimony from law enforcement witnesses. Because defendant has not demonstrated plain error affecting his substantial rights, the trial court did not abuse its discretion by denying defendant's motion for a new trial.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next argues that the evidence was insufficient to support his conviction of AWIM, MCL 750.83, in relation to firing at Colpitts. Specifically, defendant contends that the prosecution failed to establish that he possessed the intent to kill Colpitts and instead suggests that the evidence supported only an intent to frighten him. We disagree.

We review a challenge to the sufficiency of the evidence supporting a defendant's conviction de novo. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). "We view the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *Id.* "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Additionally, "[i]t is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The elements of AWIM are "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Ericksen*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010) (quotation marks and citation omitted). AWIM is a specific intent crime that requires the jury to find that defendant acted with an intent to kill. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). Because intent to kill is rarely susceptible to direct proof, "[t]he element of intent may be inferred from circumstantial evidence." *People v Kenny*, 332 Mich App 394, 403; 956 NW2d 562 (2020).

Viewed in the light most favorable to the prosecution, the evidence permitted a rational jury to conclude that defendant intended to kill Colpitts. The evidence showed that defendant fired multiple rounds during the incident and confronted Colpitts along M-60. Colpitts testified that defendant exited his vehicle and fired several shots toward him while he was inside his truck.

-6-

Colpitts described hearing the distinctive sound of bullets passing by as the shots were fired. From this evidence, the jury could reasonably infer that defendant intended to kill Colpitts. Intent to kill may be inferred from the use of a deadly weapon. See *Carines*, 460 Mich at 759. By firing multiple rounds toward an occupied vehicle at close range, defendant used a deadly weapon in a manner from which the jury could reasonably conclude that he intended to kill Colpitts rather than merely frighten him.

Further, the jury was not required to accept defendant's explanation of his conduct. See *Hardiman*, 466 Mich at 428. Given the testimony that defendant repeatedly fired a handgun in the direction of Colpitts's vehicle and that bullets passed close enough for Colpitts to hear, as well as the testimony that one of the bullets hit Colpitts's truck, the jury could reasonably reject defendant's claim that he intended only to frighten Colpitts. Accordingly, the evidence was sufficient to sustain defendant's conviction of AWIM.

## C. RESENTENCING

Defendant next argues that his sentence for AWIM was unreasonable and disproportionate. We disagree.

The trial court elected to impose a within-guidelines sentence of 22 to 50 years' imprisonment for defendant's AWIM conviction. We review defendant's sentencing challenge for reasonableness. See *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023) (*Posey I*). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks omitted). A proportionate sentence generally considers "the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022). The court may also consider:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Walden*, 319 Mich App 344, 352-353; 901 NW2d 142 (2017) (quotation marks and citation omitted).]

Within-guidelines sentences are presumed to be proportionate. *Posey I*, 512 Mich at 359. The defendant bears the burden of proving otherwise. *Id*.

Defendant contends that his within-guidelines sentence was disproportionate because the trial court allegedly relied on the prosecutor's characterization of the incident as an attempted mass shooting. Defendant claims that this is an inaccurate description of his actions and that the court therefore relied on facts not supported by evidence during sentencing. "A defendant is entitled to be sentenced according to accurately scored guidelines and on the basis of accurate information."

*People v McGraw*, 484 Mich 120, 131; 771 NW2d 655 (2009). "[I]f a minimum sentence falls within the appropriate guidelines range, a defendant is not entitled to be resentenced unless there has been a scoring error or inaccurate information has been relied upon." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006).

The sentencing record does not support defendant's claim that the court relied on inaccurate information or speculation regarding a potential mass shooting. Instead, the court focused on defendant's own explanation of the events, the danger created by defendant's conduct, and the impact on the victims. The court considered defendant's presentence investigation report and his statements during allocution, in which he explained that he committed the crimes he was convicted of because he was intoxicated. The court stated, in relevant part:

> You did explain at the time of the incident you were high on meth and alcohol, and I think basically indicated you'd been on a—almost a non-stop binge of alcohol and meth since December until the date this incident happened in July, and even when you alluded to it here, you had alcohol in your vehicle and your—you indicated your intention of going to Dollar General was to get some corn chips to have with your beer. And so unfortunately, what happened is you indicated that as a result of that binge, you were suffering from paranoia; you believed that people were after you, and that's an explanation as to why you were firing at vehicles. You thought there were people after you, and you know, unfortunately, self-indicted (sic), drug-induced paranoia is not a defense to what happened on this date, it just provides an example of how methamphetamine can and does destroy people's lives. You're not the first person this Court has seen . . . that's done criminal things out of paranoia or committed crimes because they were strung out on drugs, and until people smarten up, you probably won't be the last that I see for those reasons as well.

> You're 48 years old, and there's no excuse for your actions on that date, and you put many lives in peril, even your own, but again, as I've indicated, but for the professional handling of this case by Detective Cook. Your actions not only affected people's lives on that day, but continue to affect people to this day according to the Victim Impact Statement that I reviewed, and as well as what the victims said in here today on the record. Your guidelines call for a prison sentence, and I see no reason to deviate from that. Further, because of the number of innocent people you put in jeopardy on this date and the recklessness of your actions, I do agree with the prosecutor that a sentence at the higher end of the guidelines is what's warranted here.

These remarks demonstrate that the trial court focused on defendant's substance abuse, the danger created by firing a firearm at motorists, and the number of individuals placed at risk, rather than adopting the prosecutor's characterization of the incident as an attempted mass shooting. Accordingly, defendant has not demonstrated that the trial court abused its discretion or that his sentence was disproportionate. Defendant is not entitled to resentencing.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick